Newman, Lourie, Moore, and Wallach join, and in which Circuit Judges Dyk and Reyna concur in result. Opinion filed by Circuit Judge Moore, in which Circuit Judges Newman and O’Malley join. Opinion filed by Circuit Judge Reyna, in which Circuit Judge Dyk joins, and in which Chief Judge Prost and Circuit Judges Taranto, Chen, and Hughes join in part. Opinion .filed by Circuit Judge Taranto, in which Chief Judge Prost and Circuit Judges Chen and Hughes join, dissenting from the judgment, and in which Circuit Judges Dyk and Reyna join in part in other respects. Opinion dissenting from the judgment filed by Circuit Judge Hughes, in which Circuit Judge Chen joins. O’MALLEY, Circuit Judge. In this appeal, we consider the proper allocation of the burden of proof when amended claims are proffered during inter partes review proceedings (“IPRs”) under the Leahy-Smith America Invents Act (“AIA”), Pub. L. No. 112-29, § 6(a)-(c), 125 Stat. 284-341 (2011) (provisions creating inter partes review codified in ch. 31 of Title 35, 35 U.S.C. §§ 311-19 (2012)). Specifically, we consider how the AIA’s statutory language in 35 U.S.C. § 316(e), which places “the burden of proving a proposition of unpatentability by a preponderance of the evidence” onto the petitioner in an IPR, applies to claim amendments authorized by 35 U.S.C. § 316(d), and whether the Patent Trial and Appeal Board’s (“Board”) current practices with respect to amendments accord with that application. A panel of our court concluded that the Board did not abuse its discretion in denying Appellant Aqua Products, Inc.’s (“Aqua”) motion to amend various claims of U.S. Patent No. 8,273,183 (“the ’183 patent”) during the course of an IPR. In re Aqua Prods., Inc., 823 F.3d 1369, 1373-74 (Fed. Cir. 2016) (hereinafter “Panel Decision”). The court granted Aqua’s request for en banc rehearing and vacated the panel decision. In re Aqua Prods., Inc., 833 F.3d 1335 (Fed. Cir. 2016) (en banc) (per curiam). Upon review of the statutory scheme, we believe that § 316(e) unambiguously re-> quires the petitioner to prove all propositions of unpatentability, including for amended claims. This conclusion is dictated by the plain language of § 316(e), is supported by the entirety of the statutory scheme of which it is a part, and is reaffirmed by reference to relevant legislative history. Because a majority of the judges participating in this en banc proceeding believe the statute is ambiguous on this point, we conclude in the alternative that there is no interpretation of the statute by the Director of the Patent and Trademark Office (“PTO”) to which this court must defer under Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). And we believe that, in the absence of any required deference, the most reasonable reading of the AIA is one that places the burden of persuasion with respect to the patentability of amended claims on the petitioner.[1] Finally, we believe that the Board must consider the entirety of the record before it when assessing the patentability of amended claims under § 318(a) and must justify any conclusions of unpatentability with respect to amended claims based on that record. Because the participating judges have different views—both as to the judgment we should reach and as to the rationale we should employ in support of that judgment, as explained below, today’s judgment is narrow. The final written decision of the Board in this case is vacated insofar as it denied the patent owner’s motion to amend the patent. The matter is remanded for the Board to issue a final decision under § 318(a) assessing the patentability of the proposed substitute claims without placing the burden of persuasion on the patent owner. I. Procedural History Automated swimming pool cleaners, such as those disclosed in the ’183 patent, typically propel themselves in a swimming pool using motor-driven wheels, water jets, suction, or a combination thereof. Panel Decision, 823 F.3d at 1371. The ’183 patent discloses a jet-propelled pool cleaner with controlled directional movement and without an electric drive motor. ’183 patent, col. 10,1. 41-eol. 11,1. 3; id. col. 18, 11. 11-20. The parties began litigating questions of infringement and validity related to this patent in district court. Aqua Prods., Inc. v. Zodiac Pool Sys., Inc., No. 12-09342 (S.D.N.Y.). While that litigation was pending, Zodiac Pool Systems, Inc. petitioned the Board for inter partes review on claims 1-14, 16, and 19-21 of the T83 patent, asserting invalidity under 35 U.S.C. § 102 and § 103 in light of several prior art references. The Board instituted an IPR on claims 1-9, 13, 14, 16, and 19-21 of the ’183 patent, but not on claims 10-12. Panel Decision, 823 F.3d at 1372. Aqua then moved to substitute claims 1, 8, and 20 of the ’183 patent with proposed claims 22, 23, and 24, respectively. Id. Aqua asserted that substitute claims 22-24 complied with 35 U.S.C. § 316(d) because they did not enlarge the scope of the original claims or introduce new matter. Id. Aqua further argued that the substitute claims responded to and were patentable over the obviousness combinations at issue in the IPR. Id. The Board denied Aqua’s motion to amend. Although the Board' expressly found that Aqua’s amendments complied with the requirements of § 316(d) and 37 C.F.R. § 42.121(a)(2)(i)-(ii) (2015), the Board concluded Aqua had failed to prove the substitute claims were patentable. Aqua timely appealed that decision to this court. On appeal, Aqua argued that it did not bear the burden of proving the patentability of its proposed substitute claims. Aqua relied on the plain language of § 316(e)— which we discuss below—for its contention. The panel rejected Aqua’s argument based on this court’s precedent, which “has upheld the Board’s approach of allocating to the patentee the burden of showing that its proposed amendments would overcome the art of record.” Panel Decision, 823 F.3d at 1373 (citing Proxyconn, 789 F.3d at 1307-08; Prolitec, 807 F.3d at 1363; and Nike, 812 F.3d at 1333-34). The panel declined to “revisit the question of whether the Board may require the patentee to demonstrate the patentability of substitute claims” and held that “the burden of showing that the substitute claims were patentable rested with Aqua.” Id. The panel also rejected Aqua’s objection to the Board’s failure to consider the entirety of the record before it when assessing the patenta-bility of the amended claims. Aqua specifically objected to the Board’s refusal to consider: (1) certain' arguments Aqua made in its motion to amend; (2) arguments made in its reply to the petitioner’s challenge to its motion to amend; (3) substantial evidence in the IPR record that the cited prior art did not teach the limitations it sought to add by amendment; and (4) substantial evidence in the record of objective indicia of non-obviousness. Id. at 1373-74. Aqua sought rehearing en banc of that panel decision. We granted Aqua’s petition for en banc rehearing. In re Aqua Prods., Inc., 833 F.3d at 1336. We proposed two questions in the en banc order: (a) When the patent owner moves to amend its claims under 35 U.S.C. § 316(d), may the PTO require the patent owner to bear the burden of persuasion, or a burden of production, regarding patentability of the amended claims as a condition of allowing them? Which burdens are permitted under 35 U.S.C. § 316(e)? (b) When the petitioner does not challenge the patentability of a proposed amended claim, or the Board thinks the challenge is inadequate, may the Board sua sponte raise patentability challenges to such a claim? If so, where would the burden of persuasion, or a burden of production, lie? Id. We have jurisdiction over this appeal under 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. § 141(c). II. The Context in Which the Questions Presented Arise With its enactment of the AIA in 2011, Congress created IPRs to provide “quick and cost effective alternatives to litigation.” H.R. Rep. No. 112-98, pt. 1, at 48 (2011). In an IPR, a third party may petition the Director to review previously-issued patent claims in an adjudicatory setting. To initiate an IPR, a petitioner must show a reasonable likelihood that it would prevail with respect to at least one of the claims challenged. See 35 U.S.C. § 314(a). Following institution by the Director and a trial before the Board, the Director may “cancel any claim that the agency finds to be unpatentable” under 35 U.S.C. § 102 and.§ 103, based on cited prior art consisting of patents or printed publications. Cuozzo Speed Techs., LLC v. Lee, — U.S. -, 136 S.Ct. 2131, 2136, 195 L.Ed.2d 423 (2016). The Board reaches its conclusions based on a preponderance of the evidence and, in doing so, employs the broadest reasonable interpretation of the challenged claims for unexpired patents. Id. at 2144-46. In Cuozzo, the Supreme Court emphasized that the patent owner’s opportunity to amend its patent in IPRs is what justifies the Board’s use of the broadest reasonable interpretation standard in IPRs: The patent holder may, at least once in the process, make a motion to do just what he would do in the examination process, namely, amend or narrow the claim. § 316(d) (2012 ed.). This opportunity to amend, together with the fact that the original application process may have presented several additional opportunities to amend the patent, means that use of the broadest reasonable construction standard is, as a general matter, not unfair to the patent holder in any obvious way. Id. at 2145.[2] In its statement to the Senate Committee on the Judiciary several years before Congress enacted the AIA, the PTO explained that amendments are a key feature of post-grant proceedings: The [jPTO’s proposal is thus designed to put review of the propriety of patent claims that the public regards as important in the hands of senior, legally qualified officials with experience in dispute resolution. It is designed to be more efficient than litigation, while preserving enough of the full participation accorded to parties in litigation that challengers will be willing to risk being bound by the result. By providing for the possibility of amendment of challenged claims, the proposed system would preserve the merited benefits of patent claims better than the win-all or lose-all validity contests in district court. Patent Quality Improvement: Post-Grant Opposition: Hearing Before the Sub-comm. on Courts, the Internet, and Intellectual Property of the H. Comm, on the Judiciary, 108th Cong. 10 (2004) (hereinafter “PTO Gen. Counsel Toupin Statement”) (emphasis added) (statement of PTO General Counsel James A. Toupin). Indeed, the PTO has more than once acknowledged that use of the broadest reasonable interpretation standard is only appropriate when patent owners have the opportunity to amend. The PTO has explained that, “[s]ince patent owners have the opportunity to amend claims during IPR, [post-grant review and covered business method (“CBM”)] trials, unlike in district court proceedings, they are able to resolve ambiguities and overbreadth through this interpretive approach, producing clear and defensible patents at the lowest cost point in the system.” Office Patent Trial Practice Guide, 77 Fed. Reg. 48756, 48764 (Aug. 14, 2012). Simply put, the patent owner’s right to propose amended claims is an important tool that may be used to adjust the scope of patents in an IPR. See 35 U.S.C. § 316(d)(3) (entitled “Scope of claims.”); see also Cuozzo, 136 S.Ct. at 2144 (quoting Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 816, 65 S.Ct. 993, 89 L.Ed. 1381 (1945)). Congress deemed the patent owner’s right to amend so important that, in § 316(d), it mandated that the patent owner be permitted to amend the patent as of right at least once during the course of an IPR, provided certain specified statutory conditions were met. 35 U.S.C. § 316(d)(1); see also S. Rep. No. 110-259, at 22 (2008) (stating that, “[djuring the proceeding, the patent holder has one opportunity as a matter of right to amend the claims ...” (emphasis added)); 154 Cong. Rec. 22626 (2008) (statement of Sen. Kyi on S. 3600) (concluding that written institution decisions would be desirable because they give the “patent owner a sense of what issues are important to the board and where he ought to focus his amendments”). Four Congresses considered the post-grant review procedures that eventually became the AIA with little debate or controversy on the issue of amendment. Compare, e.g., S. 3818, 109th Cong. § 318 (2006), with H.R. 1249, 112th Cong. § 326 (2011). The right to amend actually was given added emphasis during this time. In the Patent Reform Act of 2006, the language authorizing amendments shifted from “entitled to request” to the present text providing for the opportunity for amendment as of right through a motion to amend. Compare H.R. 2795, 109th Cong. § 327 (2005), mth S. 3818, 109th Cong. § 318 (2006). The Senate report on S. 1145 stated that patent owners would be given “one opportunity as a matter of right to amend the claims.” See, e.g., S. Rep. No. 110-259, at 22 (2008). The House Report for the AIA, in its “Section-by-Section” explanation of the bill as finally enacted, states that the statute provides that: The patent owner may submit one amendment with a reasonable number of substitute claims, and additional amendments either as agreed to by the parties for settlement, for good cause shown in post-grant review, or as prescribed in regulations by the Director in inter partes review. H. Rep. No. 112-98, pt. 1, at 76 (2011) (emphasis added). In this report, several representatives noted with approval the high rate of “modification or nullification” of patent claims in inter partes reexamination and their desire to retain this feature in IPRs. Id. at 164. In other words, Congress saw the amendment process in IPRs as analogous to narrowing reissues, albeit prompted by a third-party challenger. Despite repeated recognition of the importance of the patent owner’s right to amend during IPR proceedings—by Congress, courts, and the PTO alike—patent owners largely, have been prevented from amending claims in the context of IPRs. A February 2017 study noted that the Board has only granted eight motions to amend in post-issuance review proceedings (six in IPRs and two in CBM proceedings). Binal J. Patel et al., Amending Claims at the PTAB—A Fool’s Errand?, Managing Intellectual Property (Feb. 24, 2017), http:// www.managingip.com/Article/3663698/ Amending-claims-at-the-PTABa-fools-errandhtml. The PTO’s statistics confirm that patent owners have consistently failed to obtain their requested relief on motions to amend. As of April 30, 2016, the Board had completely denied 112 of 118 motions to amend made by patent owners in IPRs, and partially denied motions to amend in four of the six remaining trials. USPTO, PTAB Motion to Amend Study, 2-4 (Apr. 30, 2016), https://www.uspto.gov/sites/ default/files/documents/2016-04-30% 20PTAB% 20MTA% 20study.pdf. Aqua and its amici contend that these statistics are a direct result of the Board’s placement of the burden of proving the patenta-bility of amended claims on the patent owner, its requirement that the patent owner satisfy that burden on the face of a 25-page motion to amend—without regard to the remainder of the record—and its requirement that the patent owner prove patentability, not just in response to the grounds of unpatentability asserted by the petitioner, but on all possible grounds and in light of all prior art known to the patent owner. MasterImage 3D, Inc. v. RealD Inc., No. IPR2015-00040, 2015 WL 10709290, at *2-4 (P.T.A.B. July 15, 2015) (clarifying Idle Free Sys., Inc. v. Bergstrom, Inc., No. IPR2012-00027, 2013 WL 5947697, at *4 (P.T.A.B. June 11, 2013)). We now assess whether the Board’s current practice of placing the substantive burden of proving patentability on the patent owner with regard to claim amendments proffered in IPRs may be employed in pending IPRs. We conclude it may not. III. Relevant Statutory and Regulatory Schemes The AIA provides that a patent holder in an IPR “may file 1 motion to amend the patent,” either by cancelling any challenged patent claim or by “propos[ing] a reasonable number of substitute claims.” 35 U.S.C. § 316(d)(1). Additional joint motions to amend may be permitted to “materially advance the settlement of a proceeding under section 317.” Id. § 316(d)(2). Section 316(d)(3) dictates that an amendment “may not enlarge the scope of the claims of the patent or introduce new matter.” Id. § 316(d)(3). In the same statutory section that discusses motions to amend, the following subsection appears: (e) Evidentiary Standards.—In an inter partes review instituted under this chapter, the petitioner shall have the burden of proving a proposition of unpa-tentability by a preponderance of the evidence. Id. § 316(e). This subsection immediately follows the provision describing a patent owner’s right to propose substitute claims in lieu of those challenged in an IPR. When an IPR is instituted and not dismissed subsequently, the Board “shall issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner and any new claim added under section 316(d).” Id. § 318(a). The statute provides that, following the final written decision and any subsequent appeal, the Director shall incorporate “in the patent ... any new or amended claim determined to be patentable.” Id. § 318(b). The AIA delegates authority to the Director to “prescribe regulations ... establishing and governing inter partes review” and, relevant to this appeal, to “set[ ] forth standards and procedures for allowing the patent owner to move to amend the patent” under § 316(d). Id. §§ 316(a)(4), (a)(9). Invoking this authority, the Director promulgated 37 C.F.R. § 42.121, which sets forth several procedures for amending claims during an IPR. This regulation permits a patent owner to file one motion to amend after conferring with the Board but “no later than the filing of a patent owner response” unless the Board has provided an alternative due date.' 37 C.F.R. § 42.121(a)(1). Under this regulation, the Board may deny a motion to amend if the amendment does not satisfy the requirements of § 316(d)(3)—i.e., if it expands the claim scope, introduces new matter, or if it “does not respond to a ground of unpatent-ability involved in the trial.” Id. § 42.121(a)(2). The patent owner is also restricted to proposing a “reasonable number of substitute claims.” Id. § 42.121(a)(3). The Director promulgated 37 C.F.R. § 42.20 to govern all motion practice before the Board. In relevant part, Rule 42.20(a) requires that any “[rjelief, other than a petition requesting the institution of a trial, must be requested in the form of a motion.” Rule 42.20(c) states additionally that “[t]he moving party has the burden of proof to establish that it is entitled to the requested relief.” While these rules do not say so expressly, the PTO claims in this appeal that the Board has interpreted Rules 42.20 and 42.121 to place the burden of persuasion on a patent owner to demonstrate, by a preponderance of the evidence, that any proposed amended claims are patentable, that it must do so in light of prior art not already part of the IPR, and that the Director has endorsed that interpretation. Specifically, in Idle Free, a six-member panel of the Board held that the patent owner must show why the proposed amended claims are patentable over not only the prior art at issue in the IPR, but also “over prior art not of record but known to the patent owner.” 2013 WL 5947697, at *4.[3] Then, in Masterlmage, another Board panel discussed Idle Free’s holding that “the burden is ... on the patent owner to show patentable distinction over the prior art of record 'and also prior art known to the patent owner.” 2015 WL 10709290, at *1 (quoting Idle Free, 2013 WL 5947697, at *4) (emphasis altered from original).[4] Among other things, the panel emphasized that the ultimate burden of persuasion regarding the question of patentability is on the patent owner. Id. None of the specifics set forth in these two panel decisions regarding a patent owner’s burden are set forth in either Rule 42.20 or Rule 42.121 and none were discussed in the 2012 Federal Register comments relating to the promulgation of those Rules. And neither opinion was published in the Federal Register. IV. Our Prior Decisions As in this case, prior panels of this court have endorsed the Board’s practice of placing the burden of demonstrating the pat-entability of amendments over the prior art on the patent owner, or have been interpreted as doing so. See Proxyconn, 789 F.3d at 1307-08; Prolitec, 807 F.3d at 1363; Synopsys, 814 F.3d at 1323-24; Nike, 812 F.3d at 1333—34; Panel Decision, 823 F.3d at 1373. In Proxyconn and Prolitec, given the parties’ arguments, we did not engage in any statutory analysis—with respect to § 316(d), § 316(e), or otherwise. We also did not analyze whether the Board either did or properly could impose the burden of proving the ultimate patentability of amended claims on the patent owner. It was not until Synopsys and Nike that we had occasion to address § 316(e). In Synopsys, Mentor objected to the denial of its motion to amend, which the Board predicated on Mentor’s failure to prove patentability over prior art references not at issue in the IPR—and over all other prior art of record. Synopsys, 814 F.3d at 1323. Relying on Proxyconn, we concluded that the scope of the burden imposed by the Board was not unreasonable. Id. We then turned to Mentor’s argument that Proxyconn was distinguishable because— unlike the patent owner in Proxyconn— Mentor objected to bearing the burden of proving the patentability of its proposed amended claims, relying on § 316(e). Id. We rejected Mentor’s argument in one paragraph: Section 316(e) does not alter our analysis. ... The introductory phrase referring to an “inter partes review instituted under this chapter” makes clear that this provision specifically relates to claims for which inter partes review was initiated, ie., the original claims of the patént that a party has challenged in a petition for review. Inter partes review was not initiated for the claims put forward in the motion to amend. Id. at 1323-24. We revisited § 316(e) in Nike. There, we read § 316(e) narrowly for the reasons cited in Synopsys. Nike, 812 F.3d at 1334. We also relied on the Director’s authority under § 316(a)(9) to set “standards and procedures ... ensuring that any information submitted by the patent owner in support of any amendment entered under subsection (d) is made available to the public.” Id. at 1333 (quoting 35 U.S.C. § 316(a)(9)). On these grounds, we concluded that Nike’s “attempt to undo our conclusion in Proxyconn ... is not persuasive.” Id. at 1334. We, thus, have had limited opportunity or cause to address the first question posed and fleshed out in this en banc proceeding. We now examine these earlier holdings in light of the language of § 316(d) and § 316(e) and the governing statutory scheme of which they are a part. V. Discussion A. The Petitioner Bears the Burden to Prove All Propositions of Unpatentability Our first en banc question asks whether the PTO may require the patent owner to bear the burden of persuasion or a burden of production regarding the patentability of amended claims, given the language of 35 U.S.C. § 316(d) and § 316(e). In re Aqua Prods., 833 F.3d at 1336. The parties do not dispute that Congress delegated authority to the Director to promulgate regulations “setting forth standards and procedures for allowing the patent owner to move to amend the patent under [§ 316(d)].” 35 U.S.C. § 316(a)(9). It is upon this authority and its own reading of § 316(d) that the PTO claims it predicates its practices regarding motions to amend in IPRs and the attendant burdens it imposes in that context. We review the PTO’s regulations and statutory interpretation pursuant to Chevron and Auer v. Robbins, 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). Chevron requires a court reviewing an agency’s construction of a statute it administers to determine first “whether Congress has directly spoken to the precise question at issue.” 467 U.S. at 842, 104 S.Ct. 2778. If the answer is yes, the inquiry ends, and we must give effect to Congress’s unambiguous intent. Id. at 842-43, 104 S.Ct. 2778. If the answer is no, the court must consider “whether the agency’s answer [to the precise question at issue] is based on a permissible construction of the statute.” Id. at 843, 104 S.Ct. 2778. The agency’s “interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous.” United States v. Eurodif S.A., 555 U.S. 305, 316, 129 S.Ct. 878, 172 L.Ed.2d 679 (2009) (citing United States v. Mead, 533 U.S. 218, 229-30, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001)). When a statute expressly grants an agency rulemaking authority and does not “unambiguously direct[]” the agency to adopt a particular rule, the agency may “enact rules that are reasonable in light of the text, nature, and purpose of the statute.” Cuozzo, 136 S.Ct. at 2142 (citing Mead, 533 U.S. at 229, 121 S.Ct. 2164, and Chevron, 467 U.S. at 843, 104 S.Ct. 2778). When the PTO does adopt rules, moreover, “[w]e accept the [Director’s] interpretation of Patent and Trademark Office regulations unless 'that interpretation is plainly erroneous or inconsistent with the regulation.” In re Sullivan, 362 F.3d 1324, 1326 (Fed. Cir. 2004) (citing Auer, 519 U.S. at 461-62, 117 S.Ct. 905, and Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945) (internal quotations omitted)). 1. Chevron Step One Thus, we begin our examination of § 316(d) and § 316(e) with the language of the statute. Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) (“As in any case of statutory construction, our analysis begins with the language of the statute.” (internal quotation marks and citation omitted)). In considering that language, we must assure ourselves that we have employed all “traditional tools of statutory construction” to determine whether Congress intended to resolve the issue under consideration. Chevron, 467 U.S. at 843 n.9, 104 S.Ct. 2778. We also “must read the words ‘in their context and with a view to their place in the overall statutory scheme.’ ” King v. Burwell, — U.S. -, 135 S.Ct. 2480, 2489, 192 L.Ed.2d 483 (2015) (quoting FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000)). We believe Congress explicitly placed the burden of persuasion to prove propositions of unpatentability on the petitioner for all claims, including amended claims. This interpretation is compelled by the literal text of § 316(e), the overall statutory scheme for IPRs set forth in the AIA, and its legislative history. We believe, moreover, that this interpretation is consistent with the language and purpose of § 316(d). a. Section 316(d) Does Not Impose Any Burden of Proof Regarding the Patent-ability of Proposed Amended Claims The PTO claims that § 316(d)(1) unambiguously places the burden on the patent owner to prove the patentability of any proposed amended claim. Its statutory argument is twofold. First, the PTO argues that the fact that § 316(d)(1) states the patent owner may “propose” substitute claims unequivocally allows the Board to deny any motion at its discretion. Specifically, the PTO believes that Congress’s use of the words “may” and “propose” indicates not that a patent owner is given a discretionary choice about whether to amend in the circumstances described, but rather that the Board has the unfettered discretion to refuse an amendment. This, the PTO believes is true even where the amendment falls within the statutorily-authorized categories of amendments and where the amendment satisfies the requirements of § 316(d)(3)—i.e., is non-broadening and does not introduce new subject matter. The PTO’s reading of § 316(d)(1) is contravened by the plain language of the statute: § 316(d)(1) says “the patent owner may” move to amend, not that the Board may or may not allow such a motion regardless of its content. It is also inconsistent with the purpose of § 316(d) which, as noted above, was to provide a patent owner with the ability to amend a challenged claim at least once as a matter of right, so long as the proposed amended claim conforms to the statutory requirements and any reasonable procedural rules. Indeed, the PTO’s reasoning would render the amendment process virtually meaningless, rather than make the possibility of amendment the central feature of the IPR process it was intended to be. We are charged with construing statutes, “not isolated provisions.” King, 135 S.Ct. at 2489 (quoting Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 290, 130 S.Ct. 1396, 176 L.Ed.2d 225 (2010)); United States v. Morton, 467 U.S. 822, 828, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984) (“We do not, however, construe statutory phrases in isolation; we read statutes as a whole.”). Second, the PTO contends that, because § 316(d)(1) says the patent owner may seek to amend by “motion,” the amendment process unequivocally puts the burden of persuasion regarding the patenta-bility of the amendment on the patent owner because movants bear the burden of proof on motions. For these reasons, the PTO contends that § 316(e) is not even relevant to the amendment process. Specifically, the PTO asserts: “Contrary to Aqua Products’ argument, the statute providing for motions to amend in inter partes review proceedings places the burden of showing patentability on the patent owner when it states, ‘the patent owner may file one motion to amend the patent,’ as the movant bears the burden on a motion.” PTO Intervenor Br. 19 (quoting 35 U.S.C. § 316(d)) (emphasis in original). It claims that, because § 316(d) says proposed amendments may be introduced by motion, the substantive burden of persuasion on the patentability of that amendment must he imposed on the movant. We reject that contention.[5] The PTO’s argument begs the question: what is the relief sought by the “motion” authorized in § 316(d)(1)? As noted, the patent owner may proffer amendments that propose to cancel any challenged claim and propose a reasonable number of substitute claims as long as the substitute claims (1) do not impermissibly enlarge the scope of the claims, and (2) do not introduce new subject matter. 35 U.S.C. § 316(d)(1), (d)(3). These requirements describe a threshold showing the Board must deem satisfied before the amended claims can be considered in—i.e., “entered into”— an IPR. This showing by the patent owner is not the same as the burden of proof on the question of patentability. The “request” made by a motion to amend is—in the PTO’s own words—for “entry” into the IPR, not for entry of an amended claim into the patent. Once entered into the proceeding, the amended claims are to be assessed for patentability alongside the original instituted claims. The PTO acknowledged this structure in its explanation of final Rule 42.121: [T]he first motion to amend need not be authorized by the Board. The motion will be entered so long as it complies with the timing and procedural requirements. Additional motions to amend will require prior Board authorization. All motions to amend, even if entered, will not result automatically in entry of the proposed amendment into the patent. Changes to Implement Inter Partes Review Proceedings, Post-Grant Review Proceedings, and Transitional Program for Covered Business Method Patents, 77 Fed. Reg. 48,680, 48,690 (Aug. 14, 2012) (hereinafter “Changes to Implement IPRs”) (emphases added). Thus, any propositions of substantive unpatentability for amended claims are assessed following entry of the amended claims into the IPR proceeding, under the standards that apply to all claims in the proceeding. The PTO justifies the burden it seeks to impose on the mov-ant under § 316(d)(1) by mischaraeterizing the nature of the relief sought by a motion made under that provision. Once the motions at issue are properly characterized, the PTO’s statutory argument falls apart. To conclude otherwise would conflate two concepts that are traditionally treated as distinct: the use of motions to raise evidentiary issues in adversarial proceedings versus the overall allocation of evidentiary burdens to the respective parties when rendering decisions on such motions. For example, although the movant has the burden to file a well-supported summary judgment motion before a court will consider it, if the underlying burden of persuasion rests with the other party, that underlying burden never shifts. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255-56, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We have noted that the “shifting burdens ... in district court litigation parallel the shifting burdens ... in inter partes reviews.” Dynamic Drinkware, LLC v. Nat’l Graphics, Inc., 800 F.3d 1375, 1378-81 (Fed. Cir. 2015). In district court, the party asserting invalidity of a patent claim bears the burden of establishing invalidity. 35 U.S.C. § 282(a). That burden of proof never shifts to the patent owner. Pfizer, Inc. v. Apotex, Inc., 480 F.3d 1348, 1359-60 (Fed. Cir. 2007). Cuozzo explains that the burden of proof in an IPR is one of the “adjudicatory characteristics” of an IPR that “make these agency proceeding's similar to court proceedings.” 136 S.Ct. at 2143. Congress expressly considered the degree of proof in IPRs. and made clear in § 316(e) that it is to be by a preponderance of the evidence—unlike that required in district court proceedings. Congress knew how to create distinctions between trial proceedings and IPRs when it so chose; Congress chose not to do so when allocating the burden of proving un-patentability.[6] For these reasons, we believe that the only reasonable reading of the burden imposed on the movant in § 316(d) is that the patent owner must satisfy the Board that the statutory criteria in § 316(d)(1)(a)—(b) and § 316(d)(3) are met and that any reasonable procedural obligations imposed by the Director are satisfied before the amendment is entered into the IPR. Only once the proposed amended claims are entered into the IPR does the question of burdens of proof or persuasion on propositions of unpatentability come into play. It is at that point, accordingly, that § 316(e) governs, placing that burden onto the petitioner. b. The Unambiguous Language of § 316(e) We have explained that, “[i]n an inter partes review, the burden of persuasion is on the petitioner to prove ‘unpatentability by a preponderance of the evidence,’ 35 U.S.C. § 316(e), and that burden never shifts to the patentee.” In re Magnum Oil Tools Int’l, Ltd., 829 F.3d 1364, 1375 (Fed. Cir. 2016) (quotation marks and citation omitted). The parties do not dispute that § 316(e) places the burden of persuasion for already issued, challenged claims on the petitioner. Based on the plain and unambiguous language of this provision, we believe that § 316(e) applies equally to proposed substitute claims. An instituted proposition of unpatenta-bility is considered throughout the IPR. It is only finally determined when the Board issues a final written decision. Both by statute and by the PTO’s own directives, any proposed amendment must seek to cancel a challenged claim and/or propose a substitute for a challenged claim, and it must do so by responding tp an instituted ground of unpatentability. See 35 U.S.C. § 316(d)(1); see also 37 C.F.R. § 42.121(a)(2)(i). The structure of an IPR does not allow the patent owner to inject a wholly new proposition of unpatentability into the IPR by proposing an amended claim. The patent owner proposes an amendment that it believes is sufficiently narrower than the challenged claim to overcome the grounds of unpatentability upon which the IPR was instituted. When the petitioner disputes whether a proposed amended claim is patentable, it simply continues to advance a “proposition of unpa-tentability” in an “inter partes review instituted under this chapter.” 35 U.S.C. § 316(e). Contrary to other provisions of Chapter 31, which repeatedly make distinctions between original and amended claims, the “proposition of unpatentability” referenced in § 316(e) is not tethered to only one type of claim. For example, §§ 316(a)(9) and 316(d) distinguish a “challenged claim” from “substitute claims.” Similarly, § 314(a) only applies to “claims challenged in the petition.” In § 318(a), Congress distinguished between “any patent claim challenged by the petitioner” and “any new claim added under section 316(d).” And in § 318(b), Congress explained the procedure for issuing a certificate confirming the patentability of claims “and incorporating in the patent ... any new or amended claim determined to be patentable.” In § 318(c), Congress provided for intervening rights with respect to “proposed amended or new elaim[s] determined to be patentable” and incorporated into the patent following an IPR. In contrast, § 316(e) does not reference “claims” at all, nor does it use the broader term “patent” to limit its scope. And, contrary to the dissent’s reading of it, there is no language in § 316(e) that confines its application to original claims for which an IPR has been instituted under § 314(a). Section 316(e) reaches every proposition of unpatentability at issue in the proceeding. Congress could have distinguished between proposed amended claims and originally challenged claims in § 316(e), but it did not. Congress is presumed to have acted intentionally when it made the dis-tinetion between challenged and amended claims in multiple parts of the AIA statutory scheme, yet declined to do the same in § 316(e). See Bates v. United States, 522 U.S. 23, 29-30, 118 S.Ct. 285, 139 L.Ed.2d 215 (1997) (“[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.” (quoting Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983))). Section 316(e) uses the term “unpatenta-bility,” which may refer to either pending or issued claims, rather than the term “invalidity,” which both courts and the PTO apply only to issued claims. See, e.g., 35 U.S.C. § 282(a) (explaining that a “presumption of validity” attaches to issued patent claims and assigning “[t]he burden of establishing invalidity of a patent or any claim thereof’ to the challenger); In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig., 676 F.3d 1063, 1080 n.7 (Fed. Cir. 2012) (“[I]n the litigation context, validity, rather than pat-entability, is the issue.”); MPEP § 706 (9th ed. Rev. 7, Nov. 2015) (explaining that “issues pertinent to patentability” arise in “the course of examination and prosecution,” while “validity” is applicable after the claims issue). Congress’s use of “unpa-tentability,” rather than “invalidity,” in § 316(e) to assign the burden of proof to the petitioner in IPRs is significant—Congress’s choice reflects its intention that the burden of proof be placed on the petitioner for all propositions of unpatentability arising during IPRs, whether related to originally challenged or entered amended claims. The Director is instructed by § 318(a) to issue a final decision on the patentability of both “any patent claim challenged by the petitioner and any new claim added under section 316(d).” Id. § 318(a) (emphasis added). And § 318(b) uses “patentable” in connection with both issued claims and amended claims. See id. § 318(b). If the Board decides that an original.or entered amended claim overcomes the petitioner’s unpatentability challenge, the claim is “patentable” and treated as a valid claim, regardless of how the claim arose. See id. § 318(a) (referring to determining “the patentability of any patent claim challenged by the petitioner and any new claim added under section 316(d)” (emphasis added)); accord id. § 318(b). Whether a claim is “patentable” or “unpatentable” depends on the content of the claim, not who carried the burden of persuasion. See id. § 318(b) (characterizing an original claim as “unpatentable” when a cancellation certificate issues or “patentable” when a confirmation certificate issues, even though the petitioner has the burden of persuasion in both instances). The terms “patentability” and “unpa-tentability” do not raise separate inquiries; if they did, Congress would not have placed the burden of proving “unpatenta-bility” on the petitioner in § 316(e) and then required the Board to issue a decision on “patentability” in § 318(a) as if that were a disparate concept. Read together— which is how related statutory sections should be read—§ 316(e) and § 318(a)-(b) explain that, if the petitioner does not prove a claim (whether original or amended) to be “unpatentable,” the Board should find the claim to be “patentable.” See, e.g., Coit Indep. Joint Venture v. Fed. Sav. & Loan Ins. Corp., 489 U.S. 561, 573, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989); see also Brown & Williamson, 529 U.S. at 133, 120 S.Ct. 1291. The introductory clauses of § 316(e) (“In an inter partes review instituted under this chapter”), § 316(d)(1) (“During an inter partes review instituted under this chapter”), and § 318(a) (“If an inter partes review is instituted and not dismissed under this chapter ,.. ”) lend further support to our reading of § 316(e). All of these clauses use essentially the same introductory language. If the introductory clause in § 316(e) were limited to only original claims—as we concluded in Synopsys and Nike—the introductory clauses of § 316(d)(1) and § 318(a) also would have to be so limited. See Sorenson v. Sec’y of the Treasury, 475 U.S. 851, 860, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986) (“The normal rule of statutory construction assumes that ‘identical words used in different parts of the same act are intended to have the same meaning.’ ” (quoting Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 87, 55 S.Ct. 50, 79 L.Ed. 211 (1934) (quoting Atl. Cleaners & Dyers, Inc. v. United States, 286 U.S. 427, 433, 52 S.Ct. 607, 76 L.Ed. 1204 (1932))).) This conclusion would make little sense, however; as discussed above, the plain language of § 316(d)(1) and § 318(a) refers to both original and amended claims. “[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.” Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982). A patent owner may only file a motion to amend as part of an already-instituted IPR. Because proposed amended claims are “entered into” and become part of the “inter partes review instituted under this chapter” so long as the patentee shows that they are non-broadening, supported by the specification, and responsive to a ground already at issue in the IPR, it would be illogical to construe these introductory clauses in an inconsistent fashion. The location of § 316(e) within § 316 itself further indicates that this provision applies to all claims in an IPR—whether existing or proposed to be amended. Section 316(e) is one of the five subsections in § 316, entitled “Conduct of inter partes review.” Section 316(e) immediately follows the subsection discussing the requirements for amended claims in IPRs. The lack of any reference to a burden of persuasion in the amendment subsection of § 316(d), while including an express reference to it one subsection later, indicates that Congress intended § 316(e) to apply to all claims considered in an IPR, including those authorized in the immediately preceding subsection. See 35 U.S.C. § 316. None of the other provisions in § 316 limit the application of § 316(e) in IPRs, nor are any of these subsections meant to be read in isolation—they describe the conduct of the proceeding as a whole. Indeed, Congress did not speak to burdens of proof or persuasion in IPRs anywhere else in the AIA; § 316(e) stands as its only command on that issue. For all these reasons, the dissent’s contention that “Congress wás writing a rule only for the class of claims that it recognized as necessarily having been challenged as unpatentable by a ‘petitioner’ ” in § 316(e) is untenable. Taranto Op. at 1348. To accept that proposition, one would have to divorce consideration of proposed amended or substitute claims from the issued and challenged claims which they, by right, seek to modify or replace. But, both by virtue of the text of § 316(d) and the' plain language of Rule 42.121, that cannot be done; the very unpatentability challenges by the petitioner are the same un-patentability challenges to which any proposed amendment must respond and which continue throughout the proceeding. These are not different “classes” of claims. c. Reading § 316(e) in the Context of the AIA As noted before, an Act of Congress “should not be read as a series of unrelated and isolated provisions.” Gustafson v. Alloyd Co., Inc., 513 U.S. 561, 570, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995); see also King, 135 S.Ct. at 2489. Because the presence of ambiguity in the meaning of a term “may only become evident when placed in context” within the statute, we next examine how § 316(e) fits within the overall statutory framework of the AIA. King, 135 S.Ct. at 2489 (citation omitted). The Supreme Court has instructed us to look to “[t]he text of the ... provision [at issue], along with its place in the overall statutory scheme, its role alongside the Administrative Procedure Act [ (“APA”) ], the prior interpretation of similar patent statutes, and Congress’s purpose in crafting inter partes review” to interpret each provision of the AIA. Cuozzo, 136 S.Ct. at 2141. The ultimate meanings of § 316(d) and § 316(e) must be “compatible with the rest of the law.” Util. Air Regulatory Grp. v. ERA, — U.S. -, 134 S.Ct. 2427, 2442, 189 L.Ed.2d 372 (2014). Read in context of the overall statutory scheme, we believe that § 316(e) does not permit placing the burden of persuasion on the patent owner. Based on the requirements outlined in §§ 311-13, the petitioner defines the scope of the IPR through the petition, similar to how a plaintiff uses traditional pleadings to define the scope of litigation before federal courts. These sections make clear that amendments do not create a “new” claim for the Board’s consideration; they merely respond to at least one ground of unpatentability' originally raised by the petitioner. Sections 314 and 316, when read together, explain that the patent owner may use amendment as a tool to narrow claim scope in an effort to ensure its patentable subject matter remains properly protected. The provision of the AIA relating to the estoppel effect of IPRs, § 315(e), is consistent with the remainder of the statute only if the petitioner bears the burden to prove its propositions of unpatentability for all claims. And, §§ 316(d)(2) and 317, in combination, contemplate the use of amendments as a settlement tool, indicating that Congress contemplated narrowing amendments which would relieve a petitioner of any threat of infringement, while allowing the patent, as amended, to survive. When read in conjunction with the directive of § 318, we believe that the Board must assess the patentability of all claims in the proceeding, including amended claims that have been entered into the proceeding after satisfying the requirements outlined in § 316(d), and must do so through the lens of § 316(e). i. Petitioner Controls the Scope of the IPR: §§ 311-13 Section 311(a) provides that a person “not the owner of a patent” may file a petition to institute an inter partes review. 35 U.S.C. § 311(a). Section 311 also limits the scope of the proceeding to grounds that “could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications.” Id. § 311(b). Section 312 sets forth the various statutory requirements to which each petition challenging the validity of a patent must conform before the PTO may institute an inter partes review. Id. § 312(a) (“A petition filed under section 311 may be considered only if—” (emphasis added)). The petition must identify, “in writing and with particularity, each claim challenged, the grounds on which the challenge to each claim is based, and the evidence that supports the grounds for the challenge to each claim ....” Id. § 312(a)(3). This provision confirms that the petitioner, not the patent owner, controls the scope of the IPR. The language of § 311 and § 312 tracks the language of § 316(e)—all reference the “grounds, or propositions of unpatentability” that carry throughout the proceeding. Section 313 further explains that the patent owner has the right, but not the obligation, to file a preliminary response to the petition. Id. § 313 (“[T]he patent owner shall have the right to file a preliminary response to the petition .... ” (emphasis added)). This provision makes sense in context because the patent owner has no burden to overcome a petitioner’s assertions. Given the statutory and regulatory requirements for amending claims in an IPR, amendments cannot and do not create new and different claims for consideration. Amendments cannot add new claim scope or new matter; they are in fact prohibited from doing so by the requirements of § 316(d). And, per the PTO’s regulatory requirements in Rule 42.121, proposed amended claims must respond to a ground of unpatentability raised by the petitioner and upon which the IPR was instituted. The ground must carry through the entire proceeding; otherwise, amendments adding limitations to the challenged claims to “overcome” an asserted challenge would make no sense.[7] ii. Institution: § 314 Relevant to this appeal, § 314(a) explains that the Director must determine that “there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition,” based on the petition and any patent owner response under § 313. 35 U.S.C. § 314(a). It is only after the institution decision that the patent owner may elect to adjust the scope of its patent grant by proposing narrowing amendments to protect its patentable subject matter. In this way, IPR functions as a process for refining and limiting patent scope, similar to the inter partes reexamination process. See Cuozzo, 136 S.Ct. at 2144. iii. Application of Estoppel to IPRs: § 315 Section 315 describes how an IPR interacts with other patent-related proceedings, including examination, administrative review, and federal court litigation. Section 315(e) provides that, where institution occurs and the proceeding results in a final written decision under § 318(a), the petitioner, real-party in interest, or privy of the petitioner are all estopped with respect to “any ground that the petitioner raised or reasonably could have raised during that inter partes review” against that claim. 35 U.S.C. § 315(e). This provision is only consistent with the remainder of the AIA if the petitioner bears the burden to prove all propositions of unpatentability. Where the petitioner bears the -burden, it is logical to estop the petitioner from raising that ground in the future, whether related to originally challenged claims or entered amended claims. If the patent owner were to bear the burden to demonstrate the patentability of proposed amended claims and to do so by reference to prior art not addressed in the IPR, it would be illogical to say that the petitioner is thereafter estopped from anything as to those claims. iv. The Impact of Settlements: §§ 317-18 Section 317, the section of the statute immediately following Congress’s express statement in § 316(e) regarding the proper burden of persuasion for all claims, contemplates, in conjunction with the opportunity for additional uncontested amendments under § 316(d)(2), the possibility that the amendment process will be used as a settlement tool in IPRs. This too makes sense; a petitioner in an IPR may decline to maintain a challenge to a narrower amended claim if the patent owner agrees not to seek to enforce any claim scope broader than the scope of the proposed amendment. The first sentence of § 317(a) states that the PTO must terminate the participation of a particular petitioner, in a particular IPR, based on the filing of a joint motion and settlement by that petitioner and the patent owner. At that point, either (1) the patent owner is the only party remaining in the IPR, and the PTO can terminate the review or proceed to a final written decision as described in § 318(a); or (2) other petitioners are still participating in the IPR, and the IPR moves forward as usual. If a settlement occurs and the IPR is terminated, no certificate incorporating the amendment into the patent ever issues. Section 318(b) makes clear that no certificate either reaffirming a challenged claim or substituting an amended claim for a challenged one issues unless and until the Board chooses to issue a final judgment under § 318(a) in which it'assesses the patentability of both categories of claims. In the absence of a final written decision, the patent survives as originally written, subject to any narrowing agreements or covenants not to sue between the original parties. And, it survives subject to any later IPR or court challenges it might face. The final sentence of § 317(a) gives the Board the option to proceed to final judgment in any proceeding where the original petitioners choose not to continue their challenge. The Board might do this for any number of reasons. For example, the Board may decide that the showing of unpatentability with respect to the challenged claims is so strong that the public is better served by a cancellation of those claims; it may decide that even the narrower, amended claims are unpatentable in the face of the prior art on which the IPR was predicated and that confirmation of that fact is important; or it may decide that the amended claims are patentable in the face of the prior art challenges precisely because they are narrower than the original claims, and that it is important for the patent to be amended to reflect that fact so the public can benefit from that narrowing. Should the Board elect to continue to a final written decision in this scenario, § 318(a) requires the Board to undertake a patentability analysis on all original and amended claims in the proceeding. Thus, it is at that point, and not earlier, that the statute contemplates consideration of an amended claim’s patentability. As the Supreme Court recognized in Cuozzo, where the challenger ceases to participate in the IPR and the Board proceeds to final judgment, it is the Board that must justify any finding of unpatentability by reference to the evidence of record in the IPR. See 136 S.Ct. at 2144. This accords with traditional requirements of agency adjudication under the APA. There is no reason dictated by either the language or the logical structure of the statute, or by Cuozzo’s recognition of the Board’s obligations when a petitioner absents itself from an IPR, to conclude that this burden does not apply equally to amended claims. Indeed, as we noted before, the language in § 318(a) mirrors that of § 316(e). v. The Overall AIA Framework Read in their entirety and collectively analyzed, the statutory provisions of the AIA lay out an internally consistent, logical, and unambiguous structure for the conduct of IPRs. Understanding the statutory structure in this way is consistent with the concept that “inter partes review helps protect the public’s ‘paramount in-' terest in seeing that patent monopolies ... are kept within their legitimate scope.’ ” Cuozzo, 136 S.Ct. at 2144 (quoting Precision Instrument Mfg. Co., 324 U.S. at 816, 65 S.Ct. 993). There is a legitimate scope for properly-crafted patent protection. The goal underlying the AIA is twofold: (1) eliminating patents that foster abusive litigation; and (2) affirming and strengthening viable patents. The legislative history reflects these dual objectives. As early as 2006, Senator Leahy explained that the AIA: [I]s not an option but a necessity. ... I also want to ensure the delicate balance we have struck in the post-grant review process and make certain that the procedure is both efficient and effective at thwarting some strategic behavior in patent litigation and at promoting a healthier body of existing patents. 152 Cong. Rec. 16834 (2006) (statement of Sen. Leahy on S. 3818) (emphasis added). Allowing narrowing amendments during an IPR helps strengthen and clarify patents. As the PTO itself testified before Congress, providing a patent owner with a meaningful opportunity to amend subject to minimal statutory and regulatory criteria helps “preserve the merited benefits of patent claims better than the win-all or lose-all validity contests in district court.” PTO Gen. Counsel Toupin Statement, at 10. The AIA achieves these dual goals through a defined mechanism allowing for a limited category of challenges—an adversary proceeding where the Board is the arbiter of, rather than a party to, challenges asserted under only § 102 and § 103 of Title 35. The AIA relies on the adversarial nature of IPRs to ensure quick but thorough adjudication of the merits: the petitioner raises its best arguments at the outset; the patent owner has the opportunity to adjust the scope of its claims if need be; and the Board provides a speedy ruling as to the patentability of the original and amended claims. d. Legislative History of § 316(e) While legislative history generally carries little weight when interpreting the text of issued statutes, “[w]hen aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no rule of law which forbids its use, however clear the words may appear on superficial examination.” Train v. Colo. Pub. Interest Research Grp., Inc., 426 U.S. 1, 10, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976). The clarity' of the statutory provision here, both alone and in context, obviates the need to rely on the legislative history of the AIA. The legislative history nevertheless strongly supports our conclusion that the language of § 316(e) unambiguously places the burden of proving the unpatent-ability of all claims on the petitioner. As noted, Congress made clear that patent owners may propose amendments to their patents as of right at least once in an IPR. The congressional record reflects Congress’s desire to protect the patent owner’s right to propose amendments by placing the burden of proving the unpa-tentability of amended claims entered into an IPR on the petitioner. Earlier drafts of § 316(e) stated that “[t]he presumption of validity in § 282 shall apply in post-grant review proceedings.” PTO Suppl. Br. 20 (emphasis in original) (quoting S. 3600, 110th Cong. § 5(c) (2008) (proposing 35 U.S.C. § 331(a)). These drafts also stated that “[t]he petitioner shall have the burden of proving.a proposition of invalidity ... S. 3600, 110th Cong. § 5(c) (2008) (emphasis added) (proposing 35 U.S.C. § 33103)); see also S. 1145, 110th Cong. § 5(c)(1) (2008) (proposing 35 U.S.C. § 331(b) (“The petitioner ... shall have the burden of proving a proposition of invalidity .... ” (emphasis added))). At this stage in the drafting process, § 316(a)(9) had not been added to the statute. In the enacted version, Congress changed “invalidity” to the broader term “unpatentability,” and also delegated rulemaking authority to the Director for “setting forth standards and procedures for allowing the patent owner to move to amend the patent” under § 316(d). These simultaneous changes reflect Congress’s intent to direct the PTO to adjudicate amended claims based on the specific burden of proof stated in § 316(e), rather than to promulgate regulations changing that substantive burden. Had Congress intended that the patent owner bear the burden of persuasion on the pat-entability of amended claims, or to leave such assignment to the PTO, it could have left the term “invalidity” in § 316(e). A Senate Report on the Patent Reform Act of 2009 explains that the burden of proving unpatentability in post-grant proceedings is always on the challenger. The examinational model places the burden on the PTO to show that a claim is not patentable, and requires a series of filings, office actions, and responses that make this system inherently slow. By contrast, in an oppositional system, the burden is always on the challenger to show that a claim is not patentable. S. Rep. No. 111-18, at 57 (2009) (emphasis added). The comparison to examination proceedings—which necessarily relate to proposed new claims—is telling. It indicates that Congress viewed the petitioner’s unwavering burden broadly, as covering all claims in the IPR. In the March 2011 Senate debates involving the replacement of inter partes reexamination with the AIA’s IPRs, Senator Kyi articulated Congress’s intention to create an adjudicative proceeding where the petitioner bore the burden of showing unpatentability: One important structural change made by the present bill is that inter partes reexamination is converted into an adjudicative proceeding in which the petitioner, rather than the Office, bears the burden of showing unpatentability. ... In the present bill, section 316(a)(4) gives the Office discretion in prescribing regulations governing the new proceeding. Thé Office has made clear that it will use this discretion to convert inter partes into an adjudicative proceeding. This change also is effectively compelled by new section 316(e), which assigns to the petitioner the burden of proving a proposition of unpatentability by a preponderance of the evidence. 157 Cong. Rec. 3386 (2011) (emphasis added) (statement of Sen. Kyi). Again, there is no indication in this language that the drafters intended § 316(e) to apply narrowly, rather than to both original and amended claims. Indeed, in earlier versions of the AIA, Congress considered language regarding the burden of proof that looked a great deal like the language the PTO wants us to read into Rule 42.20(c). See, e.g., H.R. 1908,110th Cong. (2007) (“§ 328 Proof and Evidentiary Standards (b) Burden of Proof—The party advancing a proposition under this chapter shall have the burden of proving that proposition by a preponderance of the evidence.”); see also H.R. 1260, 111th Cong. (2009) (same). But Congress changed its language on the burden of proof to state explicitly both that the petitioner bears the burden of proof in the enacted version and that the standard of proof is by a preponderance of the evidence. See 35 U.S.C. § 316(e) (“Evidentia-ry standards.-—In an inter partes review instituted under this chapter, the petitioner shall have the burden of proving a proposition of unpatentability by a preponderance of the evidence.” (emphasis added)). We believe Congress’s change removed the possibility that the PTO could assign the burden of proving patentability to the patent owner for any claim, rejecting the very interpretation the PTO now argues conforms with the statute. As noted, the AIA outlines a logical framework for the PTO’s adjudication of these proceedings. By reading too much into § 316(d) and too little into § 316(e), the PTO effectively injects illogic into that framework and under-mines its function and purpose. e. There Is No Potential for Issuance of “Untested” Amended Claims Despite the AIA’s clear framework and placement of the burden of proving unpa-tentability for all claims onto the petitioner, at least one of our earlier decisions expressed concern about the potential issuance of “untested” amended claims. See Nike, 812 F.3d at 1333. The panel in Nike explained that “placing this burden [to show patentability] on the patent owner for its newly formulated claims is appropriate,” as IPRs “are distinctly different from a typical PTO examination or reexamination where a patent examiner performs a prior art search and independently conducts a patentability analysis of all claims, whether newly proposed or previously existing.” Id. The dissent echoes that concern. See Taranto Op. at 1349-50. Respectfully, both the Nike decision and the dissent overstate the likelihood that an untested amended claim might issue. During oral argument, the parties agreed that amended claims are virtually never uncontested. Oral Arg. at 25:15-23, 47:11-21, http://oralarguments.cafc.uscourts.gov/ default.aspx?fl=2015-1177_1292016.mp3. When a petitioner does contest an amended claim, the Board is free to reopen the record to allow admission of any additional relevant prior art proffered by a petitioner or to order additional briefing on any issue involved in the trial. See 37 C.F.R. § 42.20(d); see also ' id. § 42.123. The Board may then consider all art of record in the IPR, including any newly added art, when rendering its decisions on patentability. More importantly, amended claims added to an -IPR are neither untested nor unexamined. The ' original claims issued following an examination under all criteria set forth in Title 35. Because proposed amended claims must be narrower in scope and cannot add new matter, they necessarily were subjected to that same earlier examination and are reassessed to determine whether they are supported by the patent’s written description.[8] The only remaining question is whether they are un-patentable in the face of the prior art cited in the IPR and any new art relevant to § 102 or § 103 that the petitioner asks be introduced into the IPR. See 35 U.S.C. § 316(d)(3). These “amended claims” do not, moreover, issue as part of the patent unless and until the Board both decides to render a final decision and finds those claims not unpatentable. Id. § 318(b). Even when a petitioner ceases participation in the IPR, we see little potential for harm from “untested” claims. In a scenario where the Board reviews the record presented in the IPR, including any entered amended claims, and concludes that those entered amended claims are not unpatentable, the “worst” possible outcome is that a patent issues in which the previously-examined claims have been narrowed and clarified in such a way that the petitioner does not fear its ability to continue to make, use, or sell its own product, and the public is put on notice of exactly how to innovate around those claims in the future. See id. §§ 316(d)(3), 318(b). In this scenario, moreover, the PTO will have been unable to conclude that any issued amended claims are unpatentable under very relaxed standards—preponderance of the evidence and broadest reasonable interpretation. Finally, not only will any issued amended claims be subject to the intervening rights of anyone already practicing them and limit the scope of the patent owner’s damages, if any, but any issued amended claims will remain subject to challenge in various future proceedings, including subsequent IPRs, ex parte reexaminations, district court litigations, or through the Director’s ability to initiate an ex parte reexamination pursuant to 37 C.F.R. § 1.520. Accordingly, while we recognize that our views on this question have not garnered a majority of the available votes, we believe that Congress intended that the petitioner bear the burden of persuasion as to all claims in an IPR, whether original or amended. Because we believe that “the intent of Congress is clear” in § 316(d) and § 316(e), moreover, we believe “that [should be] the end of the matter.” Chevron, 467 U.S. at 842, 104 S.Ct. 2778 (emphasis added). 2. Chevron Step Two We believe there is no need to consider whether deference to any interpretation of § 316(d) and § 316(e) that is contrary to ours is appropriate. Because, of the eleven judges participating in this en banc rehearing, six believe the relevant statutory scheme is ambiguous, however, we must and do reach Chevron Step Two. Where there is an ambiguity in a statute, we first must determine whether the ambiguity is attributable to the fact that Congress was less than clear about the result it intended, or to the fact that Congress did not intend any particular result and instead meant to allow the agency to resolve the question. Antonin Scalia, Judicial Deference to Administrative Interpretations of Law, 1989 Duke L.J. 511, 516 (1989). If it is the first, we are to resolve that ambiguity by traditional principles of statutory construction. In other words, it remains a simple question of law to be resolved by the courts. Id. Only where the latter is the case do we move on to a traditional Chevron Step Two analysis. Id. As discussed above, we think Congress was clear that it wanted to place the burden of persuasion for all propositions of unpatentability on the petitioner. If, as our colleagues urge, however, Congress’s failure to mention amended claims expressly in § 316(e) makes its intention with respect to amended claims less than clear, we believe clarity can be achieved through the traditional statutory interpretation in which we have engaged above. Congress considered both the standard of proof to be employed in IPRs and the placement of that burden. The legislative history outlined above reflects the extent to which those concepts were key considerations when structuring the IPR process. We see nothing to indicate that Congress meant to leave any aspect of that substantive decision to the PTO. Because we are forced to assume a scenario in which there is an ambiguity in the statute with respect to the substantive burden of persuasion on motions to amend that is irresolvable, we must determine: (1) whether the PTO has adopted a rule or regulation through APA-compliant procedures that have the force and effect of law; (2) if so, whether that rule is within the scope of the PTO’s rulemaking authority; and (3) if so, whether that rule is based on “a permissible construction of the statute.” Chevron, 467 U.S. at 843, 104 S.Ct. 2778. If we conclude that the answer to either of the first two inquiries is no, then it is our obligation to interpret the governing statute without deference. See Encino Motorcars, LLC v. Navarro, — U.S. -, 136 S.Ct. 2117, 2127, 195 L.Ed.2d 382 (2016). Because we conclude that the answer to at least the first question is no, we proceed to analyze the relevant statutory provisions in the first instance. The PTO’s argument that it is entitled to Chevron deference is primarily based on its misinterpretation of § 316(d), discussed above. The Supreme Court has explained that deference to misinterpretation of a statute is impermissible. See Smith v. City of Jackson, 544 U.S. 228, 267, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005) (O’Connor, J., concurring) (“Of course, it is elementary that ‘no deference is due to agency interpretations at odds with the plain language of the statute itself.’ ” (quoting Pub. Emps. Ret. Sys. v. Betts, 492 U.S. 158, 171, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989))). The PTO turns to a regulatory argument only as a fallback. Section 316(a)(9) grants the Director the authority to “set[ ] forth standards and procedures for allowing the patent owner to move to amend the patent under subsection (d) to cancel a challenged claim or propose a reasonable number of substitute claims.” The PTO argues that it is pursuant to this authority that it promulgated Rules 42.20 and 42.121, which the PTO claims place the burden of proving the proposition of the patentability of amended claims on the patent owner. Notably, the PTO does not, as does Judge Taranto, argue that Rules 42.20 and 42.121 unambiguously assign this burden to the patent owner. As discussed below, this is likely because neither rule uses the term “burden of persuasion” or “patentability” and the PTO never indicated to the public in its rulemaking process that either rule was intended to address that substantive issue. Instead, the PTO attempts to back into its request for Chevron deference by arguing that it is entitled to Auer deference for its interpretation of Rules 42.20 and 42.121, including its conclusion that those rules, together, impliedly address the burden of persuasion for amended claims in IPRs and limit the scope of § 316(e). But the regulations on which the PTO relies do not support that strained interpretation. And Auer does not authorize an agency to rewrite its regulations in the guise of “interpretation.” a. The PTO Has Not Adopted a Rule or Regulation Governing the Burden of Persuasion on the Patentability of Proposed Amended Claims We use the same interpretive rules to construe regulations as we do statutes; we consider the plain language of the regulation, the common meaning of the terms, and the text of the regulation both as a whole and in the context of its surrounding sections. Tesoro Haw. Corp. v. United States, 405 F.3d 1339, 1346-47 (Fed. Cir. 2005); Lockheed Corp. v. Widnall, 113 F.3d 1225, 1227 (Fed. Cir. 1997); Lengerich v. Dep’t of the Interior, 454 F.3d 1367, 1370 (Fed. Cir. 2006). If the regulatory language is clear and unambiguous, no further inquiry is usually required. Roberto v. Dep’t of the Navy, 440 F.3d 1341, 1350 (Fed. Cir. 2006). But “[d]eference is undoubtedly inappropriate, for example, when the agency’s interpretation is ‘plainly erroneous or inconsistent with the regulation.’ ” Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 155, 132 S.Ct. 2156, 183 L.Ed.2d 153 (2012) (quoting Auer, 519 U.S. at 461, 117 S.Ct. 905). Neither Rule 42.20 nor Rule 42.121 addresses the burdens of proof or persuasion with respect to propositions of unpatentability once an amended claim has been entered into the IPR. Rule 42.20 is a general provision establishing procedures for motion practice in IPRs. As noted previously, when the patent owner files a motion to amend claims during an IPR, the patent owner’s “requested relief’ under Rule 42.20 is the Board’s permission to enter a reasonable number of substitute claims into the IPR. That is the “motion” practice contemplated and, indeed, spelled out in § 316(d). To the extent Rule 42.20(c) imposes a burden on the patent owner as the “movant,” it is a burden to show that the amendments do “not enlarge the scope of the claims of the patent or introduce new matter” as required by 35 U.S.C. § 316(d)(3), not a burden to prove the overall patentability of the amended claim. Likewise, Rule 42.121(a)(2)(i) merely requires the patent owner to show that its proposed amendment is responsive to at least one ground of unpatentability at issue in the IPR.[9] In connection with its promulgation, the PTO explained to the public that this requirement was merely to ensure that the proposed amendment had a minimal level of relevancy to the IPR. Changes to Implement IPRs, 77 Fed. Reg. at 48,705. The PTO said that this procedural rule was intended, to streamline IPRs, not to create a substantive requirement that the patent owner bear the burden of persuasion on the patentability of an amended claim: As the PTO explained, [Rule 42.121(a)(2)(i) ] is meant to “enhance efficiency of review proceedings .... [A]ny amendment that does not respond to a ground of unpatentability most likely would cause delay, increase the complexity of the review, and place additional burdens on the petitioner and the Board.” Proxyconn, 789 F.3d at 1308 (second alteration in original) (quoting Changes to Implement IPRs, 77 Fed. Reg. at 48,705). Like Rule 42.20, Rule 42.121 does not address the underlying issue of where the burden of persuasion lies for the proposed amended claims once entered into the proceeding. The language of Rule 42.121 does not suggest that the Board must deny a motion to amend if a patent owner fails to prove the ultimate patentability of the proposed amended claims in that motion. Both by statute and by its own rules, the Board has only limited grounds for denying a motion to amend: (1) if the amendment “does not respond to a ground of uripatent-ability involved in the trial,” 37 C.F.R. § 42.121(a)(2)®; or (2) if the amendment “seeks to enlarge the scope of the claims of the patent or introduce new subject matter,” id. § 42.121(a)(2)(ii). We do not read these regulations, separately or together, to say that the patent owner must bear the burden of proving the patentability of amended claims or to require satisfaction of that burden on the face of the motion to amend. These regulatory requirements simply do not address the ultimate relief sought by the petitioner in the IPR: a determination of unpatenta-bility, leading to the cancellation of challenged patent claims—as originally issued or amended—after a final written decision. They address preconditions to entry of the amended claims into the IPR. Auer deference does not permit the PTO to write words into a regulation, or to interpret a regulation in ways that are not supported by the very language employed in the regulations. See, e.g., Christopher, 567 U.S. at 155, 132 S.Ct. 2156 (Auer “[djeference is undoubtedly inappropriate, for example, when the agency’s interpretation is ‘plainly erroneous or inconsistent with the regulation.’ ” (quoting Auer, 519 U.S. at 461, 117 S.Ct. 905)). More fundamentally, the PTO’s contention that its regulations actually address and interpret the scope of § 316(d) and § 316(e) finds no support in the language of, or commentary relating to the adoption of, those regulations. Other than language parroting the basic requirements of § 316(d)(3), there is no other reference to either statutory section, no reference to proving propositions of patentability or un-patentability, and no mention of the words “burden of persuasion.” And, there is no place in the regulations or relevant commentary where reference to an ambiguity or statutory silence in either § 316(d) or § 316(e) is claimed, explored, or mentioned. Chevron does not apply where an agency has not actually addressed the issue it purports to be within its discretion to address. See, e.g., Encino, 136 S.Ct. at 2127 (holding Chevron deference is not warranted where the agency “did not analyze or explain why the statute should be interpreted” in a particular manner). Auer cannot be invoked to substitute for an agency’s failure to analyze the relevant statutory provisions in the first instance. See Gonzales v. Oregon, 546 U.S. 243, 257, 126 S.Ct. 904, 163 L.Ed.2d 748 (2006) (“Simply put, the existence of a parroting regulation does not change the fact that the question here is not the meaning of the regulation but the meaning of the statute. An agency does not acquire special authority to interpret its own words when, instead of using its expertise and experience to formulate a regulation, it has elected merely to paraphrase the statutory language.”). Of course, “if Congress has directly spoken to an issue then any agency interpretation contradicting what Congress has said would be unreasonable.” Entergy Corp. v. Riverkeeper, Inc., 556 U.S. 208, 218 n.4, 129 S.Ct. 1498, 173 L.Ed.2d 369 (2009). The PTO’s decisions in Idle Free and Masterlmage do not alter our conclusion that the PTO’s regulations do not speak to either § 316(e) or the ultimate burden of persuasion regarding patentability. First, the Idle Free decision is not entitled to deference. It has been designated as an “interpretive” nonbinding discussion not approved by the Director, and later redesignated as a “representative” non-binding discussion. Such musings are not sufficient to command Chevron or Auer deference of any sort. See, e.g., Christensen v. Harris County, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (collecting cases and noting, “[[Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant Chevron-style deference.”); see also Mead, 533 U.S. at 230, 121 S.Ct. 2164 (“It is fair to assume generally that Congress contemplates administrative action with the effect of law when it provides for a relatively formal administrative procedure tending to foster the fairness and deliberation that should underlie a pronouncement of such force.”); Nat’l Org. of Veterans’ Advocates, Inc. v. Sec’y of Veterans Affairs, 260 F.3d 1365, 1378 (Fed. Cir. 2001) (“Chevron deference does not normally apply to informal proceedings.”). Second, Idle Free just does not say what the PTO reads into it. There, a panel of the Board examined 35 U.S.C. § 316(a)(9) and § 316(d) in the context of discussing “Claim-by-Claim Analysis” and the requirement that an amendment may be denied where it introduces new matter. See Idle Free, 2013 WL 5947697, at *1-5. But the panel did not cite to any other statutory provision. Nowhere in that decision is §. 316(e) cited or interpreted. The leap the PTO asks us to take based on Idle Free is simply too great. The PTO enacted regulations that do not interpret § 316(e). Then, a Board panel issued a decision discussing those regulations, which also never addresses § 316(e). Despite this, the PTO asks that we defer to its current contention that both the regulations and Idle Free do, in fact, define the scope of that statutory provision. We do not. The PTO next points to Masterl-mage. Again, the Board did not purport to interpret any statutory provision in Mast-erlmage. While the Board provided policy explanations for its practice of requiring the patent owner to provide patentable distinctions over a broad range of prior art, it did not explain how that interpretation is consistent with, or supported by, the governing statutes. The Board did not analyze the PTO’s rulemaking authority under 35 U.S.C. § 316(a)(9); it did not analyze the requirements for motions to amend under § 316(d); and it did not analyze the burden of proof designation under § 316(e). To be entitled to Chevron deference, “an agency must cogently explain why it has exercised its discretion in a given manner.” Motor Vehicle Mfrs. Ass’n of United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 48, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983); see also Encino, 136 S.Ct. at 2127. No such cogent explanation has ever been provided by either the Director or the Board. See, e.g., Waterkeeper All. v. EPA, 853 F.3d 527, 530, 534-38 (D.C. Cir. 2017) (vacating an EPA Final Rule and concluding that Chevron Step One ended the inquiry, where the EPA failed to point to any statutory ambiguity authorizing its Final Rule). If, moreover, as the PTO contends, Idle Free and Masterlmage actually concluded that Rule 42.20 requires the assignment of the burden of persuasion to the patent owner regarding the ultimate patentability of amended claims—despite the texts of § 316(d), § 316(e), and the regulations themselves—that burden shift would be a substantive change in the law. Medtronic, Inc. v. Mirowski Family Ventures, LLC, — U.S. -, 134 S.Ct. 843, 849, 187 L.Ed.2d 703 (2014); Dir., Off. of Workers’ Comp. Programs v. Greenwich Collieries, 512 U.S. 267, 271, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994). But the PTO itself represented to the public that Rule 42.20 was purely “procedural and/or interpretative,” not substantive. Rules of Practice for Trials Before the Patent Trial and Appeal Board and Judicial Review of Patent Trial and Appeal Board Decisions, 77 Fed. Reg. 48,612, 48,651 (Aug. 14, 2012) (hereinafter “Final Rules of Practice”). This is important. If an agency purports to rest its authority to act on an express grant of rulemak-ing authority—as the PTO suggests it may do here—then it may only act consistently with its obligations under the APA. One such obligation is to inform the public of the substance of the subjects its rulemak-ing purports to address. 5 U.S.C. § 553(b)(3) (Federal Register notice must include “either the terms or substance of the proposed rule or a description of the subjects and issues involved”). Notice of agency rulemaking is insufficient “where interested parties would have had to divine [the Agency’s] unspoken thoughts.” Int’l Union, United Mine Workers of Am. v. Mine Safety & Health Admin., 407 F.3d 1250, 1260 (D.C. Cir. 2005) (citation and quotation marks omitted, alteration in original). If notice is inadequate where an agency’s explanations are unclear, it is surely inadequate when the agency expressly denies it is adopting a practice it later attempts to insert into a rule by interpretation. In connection with the adoption of its rules governing IPRs, including Rule 42.20, the PTO defended its choice not to employ all of the rulemaking procedures under the APA by explaining, repeatedly, that nothing it was doing in its rules was substantive and nothing in its rules would impact final decisions on patentability. The Director stated: Although the Office sought the benefit of public comment, these rules are procedural and/or interpretive. Stevens v. Ta-mai, 366 F3d. [sic] 1325, 1333-34 (Fed. Cir. 2004) (upholding the Office’s rules governing the procedure in patent interferences). The final written decisions on patentability which conclude the reviews will not be impacted by the regulations, adopted in this final rule, as the decisions will be based on statutory patenta-bility requirements. Final Rules of Practice, 77 Fed. Reg. at 48,651 (emphasis added). And the Director went on to cite Cooper Technologies Co. v. Dudas, 536 F.3d 1330, 1336-37 (Fed. Cir. 2008), “for the proposition that 5 U.S.C. [sic] 553, and thus 35 U.S.C. [sic] 2(b)(2)(B), does not require notice and comment rulemaking for ‘interpretive rules, general statement of policy, or rules of agency organization, procedure or practice.’ ” Id. The PTO cannot say that its rules do not relate to issues of patentability and then later apply those very rules to impose substantive burdens of persuasion with respect to patentability on the patent owner. As Judge Moore explains in her concurrence, moreover, improperly characterizing a rule regarding burdens of proof as “procedural” does not excuse failure to comply with the Director’s obligations under the APA. Section 316(a)(9) is a narrow grant of rulemaking authority to carry out an express congressional goal: to allow the patent owner to move to amend the patent as authorized by § 316(d). In the face of that grant of rulemaking authority, the Director may only set forth such “standards and procedures” through the rule-making identified in § 316(a)(9), with all of the requirements and obligations that accompany the exercise of that authority. There are no doubt circumstances in which agencies may address unanticipated policy 'challenges, carry out generally-worded statutory charges, or set forth internal operating procedures, even through ad hoc adjudication. See, e.g., NLRB v. Bell Aerospace Co., 416 U.S. 267, 293-94, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974). This is not one of those circumstances, however. On this point, Judge Hughes conflates the broader rulemaking authority granted under § 316(a)(4)—which broadly references procedures for IPRs—with the narrow authority granted under § 316(a)(9). He also confuses Chevron deference with Aw.er deference. Because Chevron deference displaces judicial discretion to engage in statutory interpretation, it requires a relatively formal expression of administrative intent, one with the force and effect of law. Indeed, the very cases from which Judge Hughes quotes demonstrate far more formality than his chosen quotations imply out of context. Later interpretations of an agency’s formal expression can, of course, occur, and would be entitled to Auer deference. But later interpretations cannot rewrite formal administrative expressions or be used as a vehicle to skirt the obligations to engage in the necessary formalities in the first instance. Judge Hughes may have concerns about the future of administrative law, but nothing in our opinion, as properly understood, justifies those concerns. Judges Taranto and Hughes separately say that the PTO’s post-2012 consideration of the issue supports their view that the PTO’s interpretations of its own regulations are both clear and entitled to deference. Specifically, they, cite to the Board decisions in Idle Free and Masterlmage for the proposition that, by then, it was understood that the PTO was interpreting the reference to burdens of proof in Rule 42.20 to include the burden of persuasion on patentability for amended claims. Tar-anto Op. at 1355; Hughes Op. at 1363. They then cite to some roundtables and solicitation of comments from 2014, saying these together were informative about where the Director thought Rule 42.20 placed the burden of proof. They finally cite to Federal Register commentary from 2015, where the Director confirmed that she did not intend to “change her practice” of placing the burden of persuasion of proving the patentability of amended claims on the patent owner, as proof that she must have always understood that to be the practice. But neither opinion explains how this post-2012 consideration of the issue can cure the fact that Rule 42.20 never mentions the burden of persuasion, never addresses any of the relevant statutory provisions, was described by the PTO as purely a procedural—not a substantive— rule, and was publicly characterized by the PTO as a rule that applied when a determination was being made about whether to enter an amendment into an IPR and had nothing to do with the Board’s patentability determinations. While the Board’s view of how it wished to deal with amendments authorized by § 316(d) may have changed over time—and it may have become obvious that it had given the Board’s virtually universal denial of motions to amend— nothing the PTO did post-2012 can cure what it failed to do before then and still has not done.[10] We have already addressed the weakness of the PTO’s reliance on Idle Free and Masterlmage, and will not repeat those points here. Reference to the 2014 and 2015 commentaries is equally weak, if not more so. Once more, those, commentaries lack any substantive consideration of any regulation and do not purport to analyze what Congress intended when it contemplated an amendment as of right in § 316(d) or discussed the burden of proving propositions of unpatentability in § 316(e). Reference to these post-hoc rationalizations to justify deference is not just a stretch—it is Auer on steroids. See Global Crossing Telecomms., Inc. v. Metrophanes Telecomms., Inc., 550 U.S. 45, 77, 127 S.Ct. 1513, 167 L.Ed.2d 422 (2007) (Thomas, J., dissenting) (“[A] court may not, in the name of deference, abdicate its responsibility to interpret a statute.”). All the PTO did was cite policy rationales for continuing to place the burden of proving the patentability of proposed amended claims on the patent owner; it never said it found a gap or ambiguity in the AIA that allowed it to regulate that practice. Its comments say no more than Idle Free and MasterImage did. There is no cogent, considered examination of the relevant statutory provisions. “Even under Chevron’s deferential framework, agencies must operate within the bounds of reasonable interpretation. ... An agency has no power to tailor legislation to bureaucratic policy goals.” Util. Air Regulatory Grp., 134 S.Ct. at 2442, 2445 (internal quotations and citation omitted). “[A]n agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate.” Id. at 2446. To the extent the PTO’s 2015 commentary relied on this court’s endorsement of its practices in Proxyconn, as discussed above, Proxyconn never considered § 316(e) or whether the ultimate burden of persuasion on the patentability of amended claims could be placed on the patent owner; neither issue was ever in debate. And, to the extent the PTO’s 2016 commentary relied on Synopsys and Nike, it is well established that an agency’s belief that a statute or court decision compels or authorizes its practices is not the type of analysis to which deference is due. See, e.g., Negusie v. Holder, 555 U.S. 511, 521, 129 S.Ct. 1159, 173 L.Ed.2d 20 (2009); Nat’l Org. of Veterans’ Advocates v. Sec’y of Veterans Affairs, 314 F.3d 1373, 1379 n.7 (Fed. Cir. 2003) (“It is, of course, impermissible for the Department to adopt regulations ... on the ground that particular regulations are required under the unambiguous language of the statutes.” (emphasis added)). Indeed, it is an indication that no reasoned analysis occurred. In sum, the PTO has failed to make any determination on the ambiguity of either § 316(d)(1) or § 316(e) at any point before the briefing before this court. Even in its briefing, moreover, the PTO initially contends that § 316(e) does not govern amended claims at all, and only points to its interpretations of its own rules in the alternative. We therefore conclude that the Board’s decisions do not reflect “a reasonable accommodation of manifestly competing interests ... [where] the agency considered the matter in a detailed and reasoned fashion, and the decision involves reconciling conflicting policies,” and, thus, conclude that no basis for deference under either Chevron or Auer exists. Chevron, 467 U.S. at 865, 104 S.Ct. 2778 (footnotes omitted). We do not, as Judge Hughes claims, purport to require “magic words” in either the PTO’s regulations or its interpretations of those regulations. We require that the PTO comply with its obligations under the APA and make clear to the public both what it is doing and why what it is doing is permissible under the statutory scheme within which it is operating. Agency rule-making is not supposed to be a scavenger hunt. It must, moreover, be tied to the congressional purpose for which that rule-making authority was granted. We conclude that, even if we were to find § 316(e) to be ambiguous, or that the AIA statutory framework authorizes the Director to promulgate a regulation governing burdens of persuasion, the Director has never clearly done so. In fact, the PTO failed to acknowledge at any point prior to the briefing in this appeal that § 316(e) might even apply to or conflict with its current practices regarding motions to amend. Calling upon Auer to allow the agency to rectify all these failures after the fact—as Judge Hughes and the PTO both do—simply does not suffice under the law. For these reasons, we, like Judges Dyk and Reyna, find there is no interpretation of either § 316(d) or § 316(e) to which this court must defer.[11] b. Is A Rule Regarding the Burden of Persuasion on Patentability Within the Rulemaking Authority of the PTO? Judge Taranto concludes that § 316(a)(9) gives the PTO the express authority to regulate burdens of proof and persuasion with respect to amendments authorized under § 316(d). We disagree. First, the PTO’s regulations may not countermand the express burden of proof set forth in § 316(e). See Chevron, 467 U.S. at 843-44, 104 S.Ct. 2778 (explaining that, where there is a statutory gap for an agency to fill, we “give[ ] controlling weight [to the agency’s regulations] unless they are arbitrary, capricious, or manifestly contrary to the statute” (emphasis added)). Importantly, the language of § 316(a)(9) says that the Director may set forth “standards and procedures for allowing the patent owner to amend the patent” under § 316(d); this directive does not grant the PTO the power to make substantive modifications to the statutory scheme, (emphasis added). The PTO cannot regulate away the statutory directive in § 316(d)(1) that patent owners be permitted to propose amendments to challenged claims at least once as of right when the amendments comply with the requirements of that provision. While the Director certainly may pass regulations regarding the timing of motions to amend or the page limits applicable to them, may confirm the statutory threshold showings needed before the proposed amendment may become part of the ongoing IPR, and may set forth reasonable threshold preconditions for entry of an amendment into an IPR, he may not rewrite, or countermand the purpose of, substantive statutory mandates. Even if we were to accept the proposition that there is an ambiguity in the statutory scheme that is irresolvable by normal tools of statutory construction, it is not clear to us that the phrase “standards and procedures” in § 316(a)(9) was meant to encompass burdens of proof. A “standard” of proof is not the same as a burden of proof. As the Supreme Court explained in Microsoft Corp. v. i4i Ltd. Partnership, 564 U.S. 91, 100 n.4, 131 S.Ct. 2238, 180 L.Ed.2d 131 (2011), a standard of proof describes the quantum of evidence necessary to prove an issue, whereas a burden of proof establishes which party must provide that evidence. The latter is a legal principle that affects the substantive rights of the parties, not some procedural mechanism designed to streamline or maintain order in agency proceedings. Medtronic, 134 S.Ct. at 849 (“ ‘[T]he burden of proof is a ‘substantive aspect of a claim.’ ” (quoting Raleigh v. Ill. Dep’t of Revenue, 530 U.S. 15, 20-21, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000)), Greenwich Collieries, 512 U.S. at 271, 114 S.Ct. 2251 (The “assignment of the burden of proof is a rule of substantive law .... ”), and Garrett v. Moore-McCormack Co., 317 U.S. 239, 249, 63 S.Ct. 246, 87 L.Ed. 239 (1942) (“[T]he burden of proof ... [is] part of the very substance of [the plaintiffs] claim and cannot be considered a mere incident of a form of procedure.”)). While this issue is not controlling of the question before us, even assuming an ambiguity in the statutory context of which § 316(a)(9) is a part, the plain language of § 316(a)(9) arguably is not broad enough to authorize the Director to set a “burden of proof’ for the patentability of amended claims in IPRs. Assuming the PTO were permitted to regulate the substantive burden of proof or persuasion regarding the patentability of amended claims under the “standards and procedures” language of § 316(a)(9), moreover, it is also unclear that we would have an obligation to defer to such a rule. The point of Chevron is to encourage courts to defer to agencies on issues that “implicate[] agency expertise in a meaningful way.” Sandoval v. Reno, 166 F.3d 225, 239 (3d Cir. 1999); see Chevron, 467 U.S. at 865, 104 S.Ct. 2778; see also Singh v. Ashcroft, 383 F.3d 144, 151 (3d Cir. 2004). Pure questions of law—such as the substantive burden of proof or persuasion, or interpretation of the interplay between § 316(d) and § 316(e)—are not issues that implicate the PTO’s expertise. See, e.g., INS v. Cardoza-Fonseca, 480 U.S. 421, 446, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (noting that a “pure question of statutory construction [is] for the courts to decide”); see also Goncalves v. Reno, 144 F.3d 110, 127 (1st Cir. 1998), (citing Cardoza-Fonseca, 480 U.S. at 446, 448, 107 S.Ct. 1207). Those are issues that seem to reside firmly within the expertise of Article III courts. Cardoza-Fonseca, 480 U.S. at 446, 107 S.Ct. 1207. After all, it is the prerogative of the judiciary “to say what the law is.” Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803). c. De Novo Statutory Analysis Places the Burden of Proof on the Petitioner With nothing to which we must defer for our interpretation of § 316(d) and § 316(e), we are left to determine the most reasonable reading of those provisions. Specifically, we are tasked to decide in the first instance whether the AIA either requires or authorizes placing the burden of proving the patentability of amended claims on the patent owner rather than the petitioner. For all the reasons discussed in section V.A.1 of this opinion, we believe that the most natural reading of the statute is that it does not. For these reasons, we, along with Judges Dyk and Reyna, conclude that the Board erred when it imposed the burden of proving the patentability of its proposed substitute claims on Aqua. We reach this conclusion today by following two different analytical paths: we address this issue as part of a Chevron Step Two analysis, while Judges Dyk and Reyna follow the approach laid out in Encino, where the Supreme Court treated the question of whether the agency had engaged in the type of regulatory action to which deference would be due as a threshold inquiry. Once it concluded that the agency actually had not analyzed the statute or explained why the statute should be interpreted in a given way, the Supreme Court dispensed with further reference to Chevron-, it ordered the court of appeals to interpret the statute in the first instance. Encino, 136 S.Ct. at 2126-27. The Supreme Court has vacillated on whether this inquiry is always a threshold inquiry, however, rather than one that falls under Chevron Step Two. Compare id. at 2124-26, with, e.g., Michigan v. EPA, — U.S. -, 135 S.Ct. 2699, 2707-08, 192 L.Ed.2d 674 (2015) (addressing sufficiency of agency rulemaking at Chevron Step Two). Because we believe a thorough discussion of the statutory scheme at the outset lends context to the deference inquiry, and because we ultimately must interpret the statutory scheme either way, we address deference at Step Two. Judges Dyk and Reyna chose the alternative route. But, we end up in the same place under either approach: (1) there is no considered statutory interpretation that has been undertaken by the agency to which we must defer; and (2) in the absence of regulatory action to which we must defer, the burden of proving the unpatentability of all claims in an IPR—both original and amended—is on the petitioner. B. The Board Must Base Its Patentability Determinations on the Entirety of the Record Before It Our en banc order also asks whether the Board may sua sponte raise patentability challenges to a proposed amended claim. Having fully considered the record, however, we conclude that the record does not present this precise question. We believe it should be reserved for another day, as, apparently, do the other members of the court. The record and the panel decision in this case, however, directly pose a different question: whether the Board may base its patentability determinations with respect to amended claims solely on the face of the motion to amend, without regard to the remainder of the IPR record. The panel decision in this case answered that question in the affirmative. We do not. Section 318(a) provides that, where it proceeds to a final written decision, the Board is to issue a decision on the patenta-bility of both originally issued, challenged claims and any amended claims. That final substantive decision must be based on the entirety of the record. Basic principles of administrative law compel this conclusion. First, an agency must explain why it decides any question the way it does. SEC v. Chenery Corp., 318 U.S. 80, 94, 63 S.Ct. 454, 87 L.Ed. 626 (1943) (“[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained.”). That obligation means that the agency must “articulate a satisfactory explanation” of its reasoning; it may not simply provide a conclusion. Tourus Records, Inc. v. DEA, 259 F.3d 731, 737 (D.C. Cir. 2001) (quoting State Farm, 463 U.S. at 43, 103 S.Ct. 2856); see also In re Lee, 277 F.3d 1338, 1342 (Fed. Cir. 2002) (agency has an obligation “to provide an administrative record showing the evidence on which the findings are based, accompanied by the agency’s reasoning in reaching its conclusions”). Second, an agency’s refusal to consider evidence bearing on the issue before it is, by definition, arbitrary and capricious within the meaning of 5 U.S.C. § 706, which governs review of agency adjudications. Butte County v. Hogen, 613 F.3d 190, 194 (D.C. Cir. 2010). That means that the agency must take account of all the evidence of record, including that which detracts from the conclusion the agency ultimately reaches. Id. (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 487-88, 71 S.Ct. 456, 95 L.Ed. 456 (1951)); see also Princeton Vanguard LLC v. Frito-Lay N. Am. Inc., 786 F.3d 960, 970 (Fed. Cir. 2015) (“[Substantial evidence review ‘requires an examination of the record as a whole, taking into account both the evidence that justifies and detracts from an agency’s opinion.’ ” (quoting Falkner v. Inglis, 448 F.3d 1357, 1363 (Fed. Cir. 2006))); In re Lee, 277 F.3d at 1345 (“The Board’s findings must extend to all material facts .... ”); Morall v. DEA, 412 F.3d 165, 177-78 (D.C. Cir. 2005) (an agency decision that fails to consider relevant contradictory evidence is an arbitrary and capricious one). Neither of these obligations is one the Director may obviate by rule, moreover. “Reasoned decisionmaking is not a procedural requirement.” Butte County, 613 F.3d at 195; see also Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (“Scrutiny of the facts does not end, however, with the determination that the Secretary has acted within the scope of his statutory authority. Section 706(2)(A) requires a finding that the actual choice made was not ‘arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.’ To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.” (citations omitted)). Certainly, these are not requirements that the Board may eschew simply by the adoption of practices it employs when considering the patentability of amended claims during the course of an IPR. In the context of this case, accordingly, we believe that the Board’s decision, to reject Aqua’s proposed amended claims without consideration of the entirety of the IPR record was an abuse of discretion which provides an independent basis for our judgment vacating and remanding this matter to the Board. While our colleagues do not address this question, we believe it is a fairly uncontroversial proposition under the APA. C. Part III of Judge Reyna’s Concurrence Before closing, we address the final section of Judge Reyna’s concurrence. We find it odd on a number of levels. First, though it has no proposed judgment attached to it, all four dissenters “join” Part III of Judge Reyna’s concurrence. Indeed, not only is no proposed judgment attached to this section, but the dissenters disagree with the only judgment Judges Dyk and Reyna believe is the correct one—that the matter must be vacated and remanded for the Board to place the burden of persuasion on the petitioner with respect- to the patentability of the proposed amended claims. Where written words are not in support of any judgment, they cannot logically serve as an opinion of the court or any of its members. Certainly, they cannot serve as a collective opinion of those who disagree on the judgment. See, e.g., United States v. Epps, 707 F.3d 337, 348 (D.C. Cir. 2013) (concluding that the controlling opinion must “represent a common denominator” of a court’s reasoning, and such a position must “support the judgment” (quoting King v. Palmer, 950 F.2d 771, 781 (D.C. Cir. 1991) (en banc))). Second, that section of Judge Reyna’s concurrence expressly concedes that the entire discussion is dictum. It leads off by pointing out what “Aqua has not challenged” and then proceeds to discuss those very issues. And the concurrence ends by citing to and discussing PTO Rule 42.22, while noting that rule is not at issue in this case. Indeed, not once in these proceedings—here or below—has any party or any of the many amici involved relied upon Rule 42.22 or its accompanying commentary for any reason; it appears nowhere in any of the briefing and was not mentioned during oral argument. While Judge Reyna calls this section a “judgment” of the court describing what the Board may do “regarding the burden of production on remand in this case,” that, respectfully, cannot be true. Only two of the six judges who join in that conclusion have concurred in the judgment vacating the Board’s decision denying Aqua’s motion to amend and ordering a remand; that is the only judgment this court enters today. And, on remand, no questions regarding any burden of production remain. As noted, in its final written decision, the Board expressly concluded that the proposed substitute claims satisfied all statutory and rule-based production requirements applicable to them, were not indefinite, and satisfied all written description requirements. The only question that remains is whether the amended claims are patentable over the asserted prior art. It is that question which the Board must reconsider. Disparate members of the court cannot come together and purport to rule on the' applicability or validity of any rule that has never been briefed or argued to us and on which the Board did not rely below. Indeed,- it is elemental that an appellate court must avoid ruling on matters neither presented nor passed upon below. Interactive Gift Express, Inc. v. Compuserve Inc., 256 F.3d 1323, 1344 (Fed. Cir. 2001) (citing Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)); see also 19 James Wm. Moore et al., Moore’s Federal Practice § 205.05, at 205-55 (3d ed. 1997) (“It is a long-standing rule that, in order to be reviewable on appeal, a claim or issue must have been ‘pressed or passed upon below.’”). “This is because appellate courts are courts of review and ‘[n]o matter how independent an appellate court’s review of an issue may be, it is still no more than that—a review.’ ” Id. (quoting Sage Prods., Inc. v. Devon Indus., Inc., 126 F.3d 1420, 1426 (Fed. Cir. 1997)). Third, the discussion of Rule 42.22 appears contrary to everything else said by Judge Reyna today. He seems to opine that a rule that (1) does not mention motions to amend, (2) never considers § 316(d) and its contemplation of a right to amend in IPRs, and (3) never addresses the language of § 316(a)(9), which only grants the Director the authority for “setting forth standards and procedures for allowing the patent owner to move to amend” its claims, can be rewritten and expanded by the Director’s Federal Register commentary. That is directly at odds with the rationale he and Judge Dyk employ to support the principles justifying the judgment they resolve to be correct. Finally, it appears that the purpose of .Judge Reyna’s closing dictum is to create a hole in the very judgment he and Judge Dyk endorse today, to say that, as long as the Director calls something a burden of production, the Board can place any substantive burden it chooses on the patent owner’s ability to propose amendments under § 316(d). Without knowing what burdens Judge Reyna has in mind, it is hard to know whether such burdens could be characterized fairly as falling within the bounds of “standards and procedures for allowing the patent owner to move to amend the patent under [§ 316(d)].” But that is the only authority to engage in rulemaking regarding motions to amend Congress granted to the PTO under § 316(a)(9). Even if the unspecified burdens Judge Reyna envisions could be squeezed into that linguistic basket, any such burdens would still have to be reasonable. No matter how characterized, moreover, they may not operate to negate the right to amend that Congress granted in § 316(d), nor render § 316(e)’s express placement of the burden of persuasion on the petitioner meaningless. Nor can they obviate the Board’s obligation to base its patentability determinations under § 318(a) on the entirety of the record. VI. Conclusion This process has not been easy. We are proceeding without a full court, and those judges who are participating disagree over a host of issues. As frustrating as it is for all who put so much thought and effort into this matter, very little said over the course of the many pages that form the five opinions in this case has precedential weight. The only legal conclusions that support and define the judgment of the court are: (1) the PTO has not adopted a rule placing the burden of persuasion with respect to the patentability of amended claims on the patent owner that is entitled to deference; and (2) in the absence of anything that might be entitled deference, the PTO may not place that burden on the patentee. All the rest of our cogitations, whatever label we have placed on them, are just that—cogitations. Even our discussions on whether the statute is ambiguous are mere academic exercises. The final written decision of the Board in this case is vacated insofar as it denied the patent owner’s motion to amend. The matter is remanded for the Board to issue a final decision under § 318(a) assessing the patentability of the proposed substitute claims without placing the burden of persuasion on the patent owner. The Board must follow this same practice in all pending IPRs unless and until the Director engages in notice and comment rulemak-ing. At that point, the court will be tasked with determining whether any practice so adopted is valid. VACATED AND REMANDED Costs No costs. MOORE, Circuit Judge, with whom Circuit Judges Newman and O’MALLEY join. This case involves one straightforward question of statutory interpretation: Does 35 U.S.C. § 316(e) place the burden of proving unpatentability of an amended claim on the petitioner? I conclude that it does and join Judge O’Malley’s opinion. Our court has, however, concluded by a 6-5 vote that the statute is ambiguous. Because of this, we are forced to address a much harder question: Whether the agency ought to be afforded deference for its decision to place the burden of persuasion on the patentee regarding the patentability of amended claims. The agency explains that it is entitled to adopt legal standards related to motions to amend (including upon whom to place the burden of persuasion) pursuant to Congress’ delegation of gap-filling authority to the Director in § 316(a)(9). The agency claims that a number of different agency actions are each entitled to Chevron deference. This panoply of claims by the PTO has engendered the five opinions in this case. This opinion is limited to a single issue: Are Board opinions entitled to Chevron deference in this case?[1] I join Judge O’Malley’s opinion in its entirety and agree with Judge Reyna’s conclusion that the agency actions at issue are not entitled to Chevron deference. I write separately to address problems with the Director’s attempt to extend Chevron deference beyond any prior applications of the doctrine. In this case, the Director argues, not for the first time, that Board decisions are entitled to Chevron deference. The Director argues that the Board’s informative decision in Idle Free,[2] and its precedential decision in Masterlmage, represent the agency’s authoritative determination reached through formal adjudicative processes and are therefore entitled to Chevron ■ deference. The Director explains that designating a Board decision as prece-dential requires a vote to do so by a majority of the nearly 300-person Board and concurrence with the precedential designation by the Director. See Director Br. 12 n.l. Once designated as precedential, the Board decision would then bind future panels of the Board. The Director argues that the designation of Masterlmage as precedential warrants Chevron deference for the Board’s decision that the patentee shall bear the burden of persuasion on the patentability of its proposed amended claims in motions to amend. I write separately to explain why these Board opinions are not entitled to Chevron deference. In some circumstances, rules articulated in formal agency adjudication have been entitled to Chevron deference. See United States v. Mead, 533 U.S. 218, 230, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). I am not certain as a general matter whether precedential Board decisions are “formal administrative procedure[s] tending to foster the fairness and deliberation that should underlie a pronouncement of such force.” Id. Accepting without deciding that the precedential Board decision in Master-Image is such a “formal agency adjudication,” I still conclude in light of the statute it is not entitled to Chevron deference. Chevron explains: “The power of an administrative agency to administer a con-gressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.” Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (quoting Morton v. Ruiz, 415 U.S. 199, 231, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974)). Chevron continues: “If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation.” Id. at 843-44, 104 S.Ct. 2778. To be sure, Chevron, and later Mead, explains that there can be express or implicit delegation on a particular question by Congress to the agency. See id. at 843-44, 104 S.Ct. 2778; Mead, 533 U.S. at 228-29, 121 S.Ct. 2164. Those arguing for -agency deference in this case conclude that Congress expressly delegated in § 316(a)(9) authority to the Director to fill just such an explicitly acknowledged gap: Regulations. —The Director shall prescribe regulations— (9) setting forth standards and procedures for allowing the patent owner to move to amend the patent under subsection (d) ....[3] Even assuming that the Director has the authority to adopt a standard placing the burden of persuasion upon the patentee to prove the patentability of its proposed amended claims, Congress only delegated the Director the authority to do so through regulations. On this point there is no ambiguity in the statute. The clear and undisputed language of the statute is that the Director may fill this gap, the need for standards and procedures related to allowing the patent owner to move to amend the patent, but must do so through regulations. The Supreme Court explained in Mead: We granted certiorari in order to consider the limits of Chevron deference owed to administrative practice in applying a statute. We hold that administrative implementation of a particular statutory provision qualifies for Chevron deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority. 538 U.S. at 226-27, 121 S.Ct. 2164. Mead explains that Chevron deference is tied to the delegation of legislative authority, and in particular to the indication of “congressional intent.” Id. at 227, 121 S.Ct. 2164. Congressional intent to give the agency the authority to gap fill regarding standards applicable to allowing the patent owner to move to amend the patent is expressed clearly in the statute itself—the agency may do so by regulation. In light of Congress’ clearly expressed intent, we do not assume that Congress also implicitly gave the agency every other known means to gap fill. As the Supreme Court explained in Encino Motorcars, LLC v. Navarro, — U.S. -, 136 S.Ct. 2117, 2124, 195 L.Ed.2d 382 (2016), “In the usual course, when an agency is authorized by Congress to issue regulations and promulgates a regulation interpreting a statute it enforces, the interpretation receives deference .... ” And the Court in Encino added: “A premise of Chevron is that when Congress grants an agency the authority to administer a statute by issuing regulations with the force of law, it presumes the agency will use that authority to resolve ambiguities in the statutory scheme.” Id. at 2125. In Mead, the Supreme Court held, “On the face of the statute; to begin with, the terms of the congressional delegation give no indication that Congress meant to delegate authority to Customs to issue elassifi-, cation rulings with the force of law.” 533 U.S. at 231-32, 121 S.Ct. 2164. Likewise, on the face of the statute at issue here, Congress gave no indication that the Director may gap fill standards applicable to allowing the patent owner to move to amend the patent by issuing Board opinions. Congress expressly delegated authority to gap fill to the Director by regulation only. Thus, while in some circumstances, formal adjudication may suffice to entitle an agency to Chevron deference, see Mead, 533 U.S. at 230, 121 S.Ct. 2164, this is not true here where Congress’ delegation expressly articulates the means by which the agency is permitted to gap fill. See also Gonzales v. Oregon, 546 U.S. 243, 258, 126 S.Ct. 904, 163 L.Ed.2d 748 (2006) (“Chevron deference, however, is not accorded merely because the statute is ambiguous and an administrative official is involved. To begin with, the rule must be promulgated pursuant to authority Congress has delegated to the official.”). Chevron transfers to the executive the function of interpreting statutes and filling gaps in law from the judicial and legislative branches which are normally accorded these functions. Chevron deference stems from a delegation by the legislature to the executive of specific rulemaking authority. See Gonzales, 546 U.S. at 255-56, 126 S.Ct. 904 (“Deference in accordance with Chevron, however, is warranted only ‘when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.’ ” (quoting Mead, 533 U.S. at 226-27, 121 S.Ct. 2164)). Where Congress has delegated authority to “prescribe regulations,” I cannot agree that Chevron deference ought to be expanded to encompass other means by which the agency may offer its “rules.” In short, Congress may, by statute, expressly determine upon what and how the Director may promulgate rules. There are dozens of very specific grants of rulemaking authority by Congress to the Director. In some circumstances, Congress has delegated to the Director rule-making authority without specifying the means of enactment. See, e.g., 35 U.S.C. § 21 (“The Director may by rule prescribe ...”); § 23 (“The Director may establish rules for taking affidavits ... ”); § 25 (“The Director may by rule ... ”); § 27 (“The Director may establish procedures § 111(c) (“the Director may prescribe the conditions ... ”); § 119(b)(2) (“the Director may establish procedures ... ”). In other circumstances, Congress has delegated to the Director rulemaking authority and specified that it be by promulgated regulation. See, e.g., 35 U.S.C. § 115(h)(1) (“the Director shall establish regulations under which such additional statements may be filed.”); § 119(a) (“The Director may prescribe regulations ... ”); § 123(a)(1) (granting the Director the authority to “define in regulations” who qualifies as a small entity); § 132(b) (“The Director shall prescribe regulations to provide for the continued examination of applications ... ”). Where Congress has chosen to delegate rulemaking authority by regulation, including in the grant of delegated authority before us today, the exercise of that delegated authority must be through the promulgation of regulations in order to be entitled to Chevron deference. Congress has the power to determine what grants to make and how the Director must exercise that delegated rulemaking authority. If Congress has delegated to the executive specific gap-filling functions and the precise means by which the agency may promulgate such rules, we cannot and should not expand the executive’s gap-filling or rulemaking authority beyond the delegation by Congress. It is not for courts to second guess Congress’ decision that the Director must effect such rulemaking through regulation. Nonetheless, I note that there are certainly procedural differences which may un-dergird Congress’ choice between rule-making achieved through regulation and through adjudication. The promulgation of substantive regulations, consistent with the APA, requires notice of proposed rulemak-ing published in the Federal Register and an opportunity for comment before the rules may take effect. 5 U.S.C. § 553(b)-(c).[4] It requires an agency to “notify the public of the proposal, invite them to comment on its shortcomings, consider and respond to their arguments, and explain its final decision in a statement of the rule’s basis and purpose.” Perez v. Mortg. Bankers Ass’n, — U.S. -, 135 S.Ct. 1199, 1211, 191 L.Ed.2d 186 (2015) (Scalia, J., concurring). Agency adjudication, as this case highlights, can take many forms. The informative decision in Idle Free which the Director claims ought to be given Chevron deference appears to have none of the formal indicia associated with substantive rulemaking. Board decisions are designated informative by the Chief Judge “for any reason.” PTAB Standard Operating Procedure 2 (Rev. 9), at 3. The majority of the Board does not vote on the opinion or the designation, the Director need not approve it, and the decision is, according to the Board, still “not binding authority.” Id. at 3-4. Making a Board decision precedential, in contrast, requires a majority vote of the Board judges and approval by the Director, and the decision then becomes binding on the Board in subsequent matters.[5] Id. at 2-3. But precedential Board decisions are not subject to notice and comment. Precedential Board decisions are posted on the Board’s website and are not published in the Federal Register, and there is no opportunity for public comment prior to the designation as precedential.[6] Finally, neither the authority to designate opinions as precedential nor the process for doing so is to be found in the statute; rather this agency grant of power to itself is articulated only in the agency’s own Standard Operating Procedures. Regardless of whether precedential Board decisions constitute formal agency adjudication, they are not subject to the same requirements as notice and comment rule-making through regulation. Rulemaking through regulation is different from rule-making through adjudication. Assuming § 316(a)(9) grants the Director authority to place the burden of persuasion upon the patentee, this statutory delegation of authority is limited to prescribing regulations. A majority of judges agree; where a statute delegates to the Director the authority to prescribe regulations adopting standards, only notice and comment rulemaking by regulation will be given Chevron deference. See O’Malley Op. at 1321-22 (joined by Judges Newman, Lourie, Moore, and Wallach); Reyna Op. at 1339 (joined by Judge Dyk). Congress here gave the agency the authority to “prescribe regulations” on standards and procedures related to allowing the patent owner to move to amend the patent. If this rulemaking authority gives the Director authority to place the burden of persuasion on the patentee in motions to amend, it is not surprising that Congress purposefully limited the exercise of that rulemaking to APA-compliant regulations. The delegation of rulemaking authority to the Director has traditionally been quite narrowly proscribed by Congress. See John M. Golden, Working Without Chevron: The PTO as Prime Mover, 65 Duke L.J. 1657, 1691 (2016) (“[T]he PTO’s powers remain significantly limited, particularly with respect to its ability to bind courts to an agency interpretation of substantive provisions of the Patent Act.”); Joseph Scott' Miller, Substance, Procedure, and The Divided Patent Power, 63 Admin. L. Rev. 31, 32-33 (2011) (“It is settled that Congress has given the Patent Office the power to issue procedural rules for patent examination at the Office, not substantive rulemaking power of the sort federal agencies typically possess.”).[7] It is not for the courts to second guess Congress’ choice regarding agency rulemaking. This is not to say that the agency cannot, absent regulation, adopt a position and apply it to an individual case in the course of its adjudication. Of course it can, and does. But it is a distinct question whether Chevron deference ought to be extended to such a statutory interpretation, as Mead and other authorities make clear. Courts generally review questions of statutory interpretation de novo.[8] If Chevron deference applies then judicial review is substantially narrowed; we would review the agency’s statutory interpretation only to determine if it contradicts an unambiguous congressional choice and, if not, whether it is reasonable. In this case, where Congress delegated the agency rulemaking authority to be exercised through regulation, I cannot agree to extend Chevron deference to agency rulemaking achieved through other means. I would thus review the relevant legal question—who has the burden of persuasion—without giving Chevron deference to the agency position articulated in its Board opinions. Judge Hughes argues that when Congress enacts legislation that says “The Director shall prescribe regulations ...” it does not really mean regulations. According to Judge Hughes, the term regulation is “generic.” Hughes Op. at 1364. According to Judge Hughes, it includes agency rules apparently without regard to how they are adopted.[9] Id. Judge Hughes believes that when the patent statute authorizes the Director “to prescribe regulations” for some things (like legal standards), but permits the Director “to establish procedures” or “to establish rules” for other things, those differences are without meaning. I cannot agree with such a squishy approach to statutory interpretation. I believe that Congress, by authorizing the agency to “prescribe regulations” in § 316(a) while using broader language in other provisions of the statute, has chosen how the PTO is permitted to exercise the authority delegated by § 316(a) and the prescribed process does not include Board decisions, whether precedential or not. Congress can choose what to delegate to agencies and how the agencies are permitted to exercise that delegated authority.[10] Unlike Judge Hughes, I conclude that when Congress expressly delegates to the Director the ability to adopt legal standards and procedures by prescribing regulations, the Director can only obtain Chevron deference if it adopts such standards and procedures by prescribing regulations. “Congress ... does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.” Whitman v. Am. Trucking Ass’ns, Inc., 531 U.S. 457, 468, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001). The Board may adopt a legal standard through a prece-dential decision in an individual case, but that legal standard will not receive Chevron deference when Congress only authorized the agency to prescribe regulations. Concluding Thoughts Chevron has effected a broad transfer of legislative and judicial function to the executive. See Michigan v. EPA, — U.S. -, 135 S.Ct. 2699, 2712-14, 192 L.Ed.2d 674 (2015) (Thomas, J., concurring) (questioning the constitutionality of Chevron deference under the separation of the powers); Gutierrez-Brizuela v. Lynch, 834 F.3d 1142, 1149-58 (10th Cir. 2016) (Gorsuch, J., concurring) (Chevron “permitfs] executive bureaucracies to swallow huge amounts of core judicial and legislative power and concentrate federal power in a way that seems more than a little difficult to square with the Constitution of the framers’ design.”); Egan v. Del. River Port Auth., 851 F.3d 263, 278-83 (3d Cir. 2017) (Jordan, J., concurring) (“The deference required by Chevron not only erodes the role of the judiciary, it also diminishes the role of Congress.”); Philip Hamburger, Chevron Bias, 84 Geo. Wash. L. Rev. 1187, 1189 (2016) (asking, “even where agencies have congressional authority to exercise their judgment about what the law is, how can this excuse the judges from their constitutional duty, under Article III, to exercise their own independent judgment?”); Jeffrey A. Pojanowski, Without Deference, 81 Mo. L. Rev. 1075,1079 (2016) (summarizing scholarly critique of the Chevron doctrine). I do not agree with the agency’s attempts to expand Chevron. We cannot by judicial fíat usurp legislative authority and hand it over to the executive. REYNA, Circuit Judge, joined by Circuit Judge DYK; and in which Chief Judge PROST and Circuit Judges TARANTO, CHEN, and HUGHES join only to Part III. Summary My colleagues today join one of two thorough and well-reasoned opinions, Judge O’Malley’s opinion and Judge Tar-anto’s dissent. Both opinions begin and end with a Chevron analysis. They operate under the premise that whether Chevron deference is warranted is a yes-or-no question. I disagree with that premise and chart a different course. The course of this opinion takes three turns. First, I concur in Judge Taranto’s reading of § 316(e) as ambiguous to be the fairest reading of the statute and of § 316(a)(9) as authorizing the Patent Office to promulgate a regulation on the burden of persuasion. This means that a majority of the court interprets § 316(e) to be ambiguous as to the question of who bears the burden of persuasion in a motion to amend claims. Second, I determine that the Agency’s general discussion finding that the burden of persuasion is borne by the patentee is not an interpretation of the statute that carries the full force of law, nor did the Agency properly promulgate this substantive rule of widespread applicability in compliance with the Administrative Procedure Act. Third, I conclude that § 316(d) and 37 C.F.R. § 42.121 place a default burden of production on the paten-tee. This last part of the opinion is joined by Chief Judge Prost and Circuit Judges Dyk, Taranto, Chen, and Hughes, collectively representing a majority view of the court. In conclusion, although I do not join her opinion, Judge O’Malley and I agree to vacate and remand this matter, but for entirely different reasons. I would vacate and remand with instruction for the Agency to review the underlying motion to amend by applying only a burden of production on the patent owner, as § 316(d) and 37 C.F.R. § 42.121 currently permit, and not a burden of persuasion, and a majority of the court agrees. This opinion does not bar the Agency from crafting a wholesome interpretation of the evidentia-ry burdens allowed under the inter partes review statute that could be afforded deference if properly promulgated under APA rulemaking procedures. I. Ambiguity of § 316(E) The Supreme Court has rejected an all- or-nothing view of deference in favor of a nuanced approach that accounts for the full spectrum of an agency’s action. United States v. Mead, 533 U.S. 218, 236-37, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). Such an approach requires that we begin this inquiry by looking at the nature of the question at issue and the interpretive method used by the Agency. Barnhart v. Walton, 535 U.S. 212, 222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002) (citing Mead, 533 U.S. at 229-31, 121 S.Ct. 2164). Indeed, this case turns on the interpretative method used by the Patent Office. As discussed further below, I conclude that the’ Patent Office has yet to fully consider the inter partes review statutes, 35 U.S.C. §§ 316(a)(9), (d), and (e), that this court has been tasked to review. One result is that the Agency action in question is disassociated from the statute at hand. Chevron deference is thus not applicable. See Negusie v. Holder, 555 U.S. 511, 521, 129 S.Ct. 1159, 173 L.Ed.2d 20 (2009). I further conclude that the Patent Office’s attempt to assign a burden of persuasion to be procedurally flawed such that Chevron deference is not warranted. See Encino Motorcars, LLC v. Navarro, — U.S. -, 136 S.Ct. 2117, 2125, 195 L.Ed.2d 382 (2016). The question before the court is whether, under § 316(e), Congress barred the Patent Office from assigning the patent owner, who moved to amend its claims, the burden of proof, also understood as the burden of persuasion, to show its proposed substitute claims are patentable. My view that Chevron deference does not apply does not preclude me from reviewing in the first instance the import of § 316(e) with respect to motions to amend. See Encino, 136 S.Ct. at 2127. Independent of the question of deference, I agree with Judge Taranto’s view that § 316(e) can be fairly interpreted to permit the Patent Office to assign the burden of persuasion on the patent owner who moves to amend its claims. Accordingly, I concur with Part III of Judge Taranto’s Opinion only with respect to his conclusion that § 316(e) is ambiguous and that the Patent Office has the authority within § 316(a)(9) to promulgate regulations on the burden of persuasion, and I join that limited portion of his opinion. Taranto Op. 8, 25. II. Patent Trial and Appeal Board’s General Discussion I now turn to whether the Patent Office has set forth an interpretation of the evi-dentiary burdens codified in the inter partes review statute to which Chevron deference would apply. Here, I depart from Judge Taranto and Judge O’Malley, both of whom engage in a Chevron two-step analysis. The Patent Office has yet to proffer a fully considered interpretation of the inter partes review statute directed to the evidentiary burdens for motions to amend necessary for Chevron deference, and its attempt to promulgate a rule through ad hoc adjudication is too procedurally defective to receive Chevron deference. Negusie, 555 U.S. at 521, 129 S.Ct. 1159; Encino, 136 S.Ct. at 2125; Mead, 533 U.S. at 227, 121 S.Ct. 2164. The nature of this question involves an administrative agency’s authority to assign a burden of persuasion—a substantive rule. Dir., Office of Workers’ Compensation Programs, Dep’t of Labor v. Greenwich Collieries, 512 U.S. 267, 271, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994) (citing Am. Dredging Co. v. Miller, 510 U.S. 443, 454, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994)). The allocation of this burden of persuasion was first addressed in Idle Free Systems, Inc. v. Bergstrom, Inc., where the Patent Trial and Appeal Board, through a panel of six administrative law judges, dismissed a patent owner’s motion to amend for failure to confer with the Board before filing its motion in violation of 37 C.F.R. § 42.121. No. IPR2012-00027, 2013 WL 5947697, at *1 (P.T.A.B. June 11, 2013). Instead of stopping at dismissal, the Board continued into dicta. In what it called a “general discussion,” the Board established wholly new evidentiary requirements mandating that the burden of persuasion is on the' patent owner to show its proposed substitute claims contain a patentable distinction over the prior art. Id. at *4. The dicta in Idle Free was constructed without any reference to the specific circumstances of the case before the Board. The Board relied on 37 C.F.R. §. 42.20— a general regulation that provides that “[t]he moving party has the burden of proof to establish that it is entitled to the requested relief.” Idle Free’s, “general discussion” did not consider the text of the America Invents Act statute, how various statutory sections interrelate, whether the Board had the statutory authority to issue substantive rules for motions to amend through adjudication, or whether the statute is inconsistent with the Board’s interpretation of § 42.20. The Board also provided no rationale as to why the burden of persuasion was best situated with the patent owner.[1] Idle Free was designated informative, which the Chief Judge of the Board can do “for any reason.” PTAB Standard Operating Procedure 2 (Rev. 9). Informative decisions provide “Board norms on recurring issues,” “guidance on issues of first impression,” and “guidance on Board rules and practices.” Id. at 3. Idle Free’s dicta thus became nonbinding guidance. This nonbinding guidance was never converted into a regulation. Review of Idle Free first reached this court in Microsoft Corp. v. Proxyconn, Inc., 789 F.3d 1292, 1303-08 (Fed. Cir. 2015). In Proxyconn, this court narrowly addressed the Board’s interpretation of its regulations, 37 C.F.R. §§ 42.20 and 42.121. Id. at 1306. But Proxyconn contains no discussion of whether the inter partes review statute, particularly § 316(e), bars 37 C.F.R. § 42.20 from allocating the burden of persuasion on the patent owner to show its proposed substitute claims are patent-ably distinct over the prior art. Id. at 1307 n.4 (choosing not to address “Idle Free’s, requirement that the patentee [sic] show patentable distinction over all prior art known to the patent owner.” (quotation marks and citation omitted)). Significantly, the court in Proxyconn did not consider that Idle Free’s requirements were dicta disassociated from the statute. The court in Proxyconn did not raise or mention the issue of statutory interpretation. Despite this dearth of statutory interpretation, the Patent' Office embraced Proxyconn as a ringing endorsement of Idle Free in MasterImage 3D, Inc. v. RealD Inc., No. IPR2015-00040, 2015 WL 10709290, at *1 (P.T.A.B. July 15, 2015), stating that under Idle Free, “[t]he ultimate burden of persuasion remains with Patent Owner, the movant, to demonstrate the patentability of the amended claims.” It was a cold embrace. I agree with Judge O’Malley’s well-articulated view on this particular point. Arguments presented in Proxyconn did not obligate the court to “engage in any statutory .analysis—with respect to § 316(e) or otherwise.” O’Malley Op. 16-17. In Masterlmage, the Board adopted Idle Free’s guidance that the patent owner bears the burden of persuasion to show its proposed substitute claims are patentable and clarified the scope of prior art to be “prior art of record and prior art known to the patent owner.” Id. at *1. The decision relies heavily on Proxyconn for the proposition that “[t]he ultimate burden of persuasion remains with the Patent Owner, the movant, to demonstrate the patentability of amended claims,” but fails to acknowledge that Proxyconn was limited to reviewing the Patent Office’s interpretation of its regulations, primarily 37 C.F.R. §§ 42.20 and 42.121. Masterlmage, like Idle Free, contains no discussion of § 316(e) or of the scope of the Board’s rulemaking authority under § 316(a)(9). On May 10, 2016, almost a year after it was issued, the Patent Office designated Masterlmage as precedential.[2] The Patent Office now cites to Idle Free as the underlying authority for the proposition that the patent owner bears the burden of persuasion for showing its substitute claims are patentable over the prior art of record.[3] Given this important aspect of the “full spectrum” of the Agency’s action, we should not ignore that the Patent Office’s thinking on the allocation of the burden of persuasion in a motion to amend is the Idle Free dicta. I do not accept these dicta to be an interpretation of §§ 316(e), 316(d), and 316(a)(9). As Idle Free and Masterl-mage lack any discussion of the evidentia-ry standard codified at § 316(e), or how § 316(e) impacts §§ 316(d) and 316(a)(9), I conclude that the Patent Office has not fully considered or interpreted the relevant statutes. Even the underlying Board opinion in this matter lacks any discussion of §§ 316(a)(9), (d), or (e). Zodiac Pool Sys., Inc. v. Aqua Prods., Inc., No. IPR2013-00159, 2014 WL 4244016 (P.T.A.B. Aug. 22, 2014). Without the Patent Officé’s full consideration of the statutory question currently before the court, there is no ripened interpretation to defer to, and that renders irrelevant the question of Chevron deference. See Negusie, 555 U.S. at 521, 129 S.Ct. 1159 (declining to reach the issue of Chevron deference where the agency did not articulate an interpretation based on a full consideration of the statute). In Negusie, the Court held that where an agency fails to fully consider the statutory question presented, courts should not reach the question of Chevron deference. 555 U.S. at 523, 129 S.Ct. 1159. The agency at issue had relied on a mistaken premise that a Supreme Court decision controlled its interpretation. Id. at 516, 522-23, 129 S.Ct. 1159. The Court remanded to the agency, finding that it failed to reach an independent interpretation in the first instance and that the agency’s full consideration of the statutory question is required before the Court considers deference. Id. Here, like Negusie, the Board has not addressed the statutory question of how § 316(e) impacts the evidentiary burdens in a patent owner’s motion to amend or the rulemaking scope of § 316(a)(9). This important aspect of the “full spectrum” of the agency action is clear: The Patent Office has made no independent interpretation in the first instance. The Board’s Masterl-mage opinion rests on the mistaken premise that Proxyconn fully endorses the Patent Office’s placement of the burden of persuasion on the patent owner to prove the patentability of its proposed substitute claims. As discussed above, the holding in Proxyconn was limited to reviewing the Patent Office’s regulations and does not address § 316(e) or the scope of § 316(a)(9). Without the Board’s fully considered interpretation of § 316 in the first instance as applied to the burden of persuasion in motions to amend, Chevron deference is not warranted.[4] Negusie, 555 U.S. at 521, 129 S.Ct. 1159. Indeed, under these circumstances, engaging in a Chevron analysis would be an exercise in speculation. I also conclude that the Patent Office does not possess the statutory authority to issue through adjudication a substantive rule that creates and allocates a burden of persuasion. If at all, it can only do so through the promulgation of a regulation consistent with the APA, 5 U.S.C. § 553. Where an agency exceeds its delegated authority by improperly issuing a substantive rule, it acts ultra vires and the resulting rule is a nullity. City of Arlington v. FCC, 569 U.S. 290, 133 S.Ct. 1863, 1869, 185 L.Ed.2d 941 (2013); Chrysler Corp. v. Brown, 441 U.S. 281, 302, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979); see also Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999); Steel Co. v. Citizens for a Better Env’t., 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).[5] The Patent Office cannot effect an end-run around its eongressionally delegated authority by conducting rulemaking through adjudication without undertaking the process of promulgating a regulation. Nor should the Patent Office be permitted to effect an end-run around the APA’s rulemaking process. Judge Taranto’s opinion thoroughly considers the notice-and-comment periods for proposed amendments for the rules of practice for trials before the Board following Idle Free. Tar-anto Op. 28-29. But those attempts clearly fell short of a proper rulemaking on a burden of persuasion; no final regulation issued on that subject.[6] The Patent Office’s commentary fails to adequately address the importance of § 316(e) on a patent owner’s motion to amend its claims, or discuss the scope of the Patent Office’s authority to promulgate substantive rules through adjudication or regulation under § 316(a)(9). Such general commentary on existing practices is not equivalent to APA rulemaking, which requires notice of the issues involved in formulating a rule that would include the statutory interpretation issues now before the court. 5 U.S.C. § 553(b). The Patent Office’s attempt to “construct policy by adjudication is evident.” First Bancorporation v. Bd. of Governors of Fed. Reserve Sys., 728 F.2d 434, 438 (10th Cir. 1984). While I recognize that the choice between rulemaking via adjudication or regulation lies within an agency’s discretion, “[t]he function of filling the interstices” of the Patent Act “should be performed as much as possible, through the quasi-legislative promulgation of rules to be applied, in the future.” SEC v. Chenery Corp., 332 U.S. 194, 202, 67 S.Ct. 1760, 91 L.Ed. 1995 (1947). An agency’s choice to use adjudication to construct rules of general applicability can amount to an abuse of discretion. NLRB v. Bell Aerospace Co. Div. of Textron, Inc., 416 U.S. 267, 295, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974). Rulemaking through adjudication is a nonstarter here, where the subject rule is a significant game change in the inter partes review process by setting out a substantive, rule that creates and allocates an evidentiary burden to a party, none of which before existed. See Morton v. Ruiz, 415 U.S. 199, 232-36, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974); see also 5 U.S.C. § 552(a)(D). Such a substantive rule of general applicability should not be reached through ad hoc adjudication. Ford Motor Co. v. FTC, 673 F.2d 1008, 1009 (9th Cir. 1981); Matzke v. Block, 732 F.2d 799, 802 (10th Cir. 1984). This is particularly true in this case because the rule articulated in Idle Free and Masterlmage contains no adjudicative facts specifically relevant to the circumstances of the petitioner or patent owner. See First Bancorporation, 728 F.2d at 438. Thus, while decisions such as Masterl-mage may occasionally be designated as precedential, there must be a principled legal reason for doing so. There is no reason to conclude that Congress intended “to create a Chevron patchwork of [adjudicative decisions], some with force of law, some without.” Mead, 533 U.S. at 234, 121 S.Ct. 2164. While I recognize the Director’s authority to designate Board decisions as precedential for agency consistency and to establish purely procedural requirements by adjudication, this authority is not a carte blanche to use adjudicative rulemaking without accounting for the nature of the rule at issue and the rule’s effect on other litigants. Here, because there was no such accounting, the Director’s designation of Masterlmage as precedential was little more than an attempt to issue a substantive rule without following established procedural requirements of rulemaking under- the APA. Where a statute is silent on the allocation of an evidentiary burden and there is no agency action that earns Chevron deference such as a wholesome interpretation of the question at hand, the court’s review of the agency’s choices typically begins with the ordinary default rules of evidence. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009); see Schaffer v. Weast, 546 U.S. 49, 56, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005). This is because Congress is presumed to draft legislation with these long-standing default rules in mind. Meacham v. Knolls Atomic Power Lab., 554 U.S. 84, 91-92, 128 S.Ct. 2395, 171 L.Ed.2d 283 (2008). Here, as discussed further below, § 316(d) and the Patent Office’s regulations governing motions to amend claims override any default evidentiary rules by placing only a burden of production on a patent owner to satisfy the requirements of § 316(d) and 37 C.F.R. § 42.121.[7] Under the statute, therefore, the default rule is that the patent owner does not bear the burden of persuasion on the patentability of its proposed amended claims.[8] III. Burden of Production It is important to note that Aqua has not challenged two important aspects of the Board’s practice pertaining to the burden of production. First, the obligations the Patent Office may impose on the patent owner to produce evidence pertinent to the required assessment of patentability. See Microsoft Corp. v. i4i Ltd. P’ship, 564 U.S. 91, 100 n.4, 131 S.Ct. 2238, 180 L.Ed.2d 131 (2011) (distinguishing burdens of persuasion from burdens of production); Dynamic Drinkware, LLC v. Nat’l Graphics, Inc., 800 F.3d 1375, 1378-79 (Fed. Cir. 2015). The other is the assignment of various pleadings or argument duties, i.e., the scope of obligations the Patent Office may impose on the patent owner to address particular patentability issues in its motion to amend. See Veritas Techs., LLC v. Veeam Software Corp., 835 F.3d 1406, 1414-15 (Fed. Cir. 2016) (noting that issue of what patent owner must address in its motion to amend is distinct from the issue of the ultimate burden of persuasion on the evidence). Section 316(e) does not address either aspect. With respect to motions practice outside the inter partes review context, it is well settled that regardless of which party bears the ultimate burden of persuasion, the movant bears a burden of production. For example, Federal Rule of Civil Procedure 7(b)(1) provides that any motion must “state with particularity the grounds for seeking” a court order and “state the relief sought.” “Thus, a motion that fails to state any grounds for relief or a motion that simply states that there are several reasons for relief without explaining those grounds for relief is insufficient .... ” Allender v. Raytheon Aircraft Co., 439 F.3d 1236, 1240 (10th Cir. 2006); see also United States ex rel. Doe v. Dow Chem. Co., 343 F.3d 325, 331 (5th Cir. 2003) (noting that a “bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought, cf. Fed. R. Civ. P. 7(b)—does not constitute a motion within the contemplation of rule 15(a)”). There is no disagreement that the patent owner bears a burden of production in accordance 35 U.S.C. § 316(d). Indeed, the, Patent Office has adopted regulations that address what a patent owner must submit in moving to amend the patent. 37 C.F.R. §§ 42.20(a), 42.22(a), 42.121(a)(2)(i). For instance, § 42.22(a) requires a movant to provide in a motion “[a] full statement of the reasons for the relief requested, including a detailed explanation of the significance of the evidence including material facts, and the governing law, rules, and precedent.” During rulemaking, regarding rules of practice before the Board, the Patent Office cited § 42.22 to explain, In the event that a patent owner files a motion to amend the claims, the patent owner must include a statement of the precise relief requested and a full statement of the reasons for the relief requested, including a detailed explanation of the significance of the amended claims (e.g., a statement that clearly points out the patentably distinct features for the proposed new or amended claims). See § 42.22. 77 Fed. Reg. at 48,626. These regulations are not called into question by today’s decision. Contrary to Judge O’Malley’s suggestion, Part III of my opinion, joined by a majority of this court, is not “dictum.” See O’Malley Op. -1326-27. Instead, Part III of this opinion sets forth the judgment of this court on what the Board may and may not do with respect the burden of production on remand in this case. To that extent, a patent owner is not excused from assisting the Board to perform its statutory obligation to “issue a final written decision with respect to the patentability of ... any new claim added under section 316(d).” 35 U.S.C. § 318(a). IV. Conclusion With respect to the burden of persuasion, my colleagues’ willingness to dive headlong into a Chevron two-step analysis without initially considering whether the Patent Office’s position in Idle Free and Masterlmage is an interpretation of the inter partes review statute fails to account for the Supreme Court’s nuanced approach that reviews the full spectrum of an agency’s actions. I decline to extend Chevron deference to the Patent Office until it has fully considered the statutory question. Until then, there is nothing to review, the Agency action is a nullity. Given the foregoing, I would hold that the Agency action under consideration in this case to be contrary to law. Unwired Planet, LLC v. Google Inc., 841 F.3d 1376, 1379 (Fed. Cir. 2016); 5 U.S.C. § 706(2). With this in mind, I would vacate the Board’s decision denying Aqua’s motion to amend, and remand for further proceedings. Should the Patent Office present a fully considered interpretation of the governing statute and properly promulgate such a rule through APA compliant rule-making, Chevron deference would be on the table. In the interim, the Patent Office must by default abide by the existing language of the inter partes review statute and regulations, § 316(d) and 37 C.F.R. § 42.121, which only allocate a burden of production to the patent owner. . To the extent our prior decisions in Microsoft Corp. v. Proxyconn, Inc., 789 F.3d 1292 (Fed. Cir. 2015); Prolitec, Inc. v. ScentAir Techs., Inc., 807 F.3d 1353 (Fed. Cir. 2015), petition for reh’g pending; Synopsys, Inc. v. Mentor Graphics Corp., 814 F.3d 1309 (Fed. Cir. 2016); and Nike, Inc. v. Adidas AG, 812 F.3d 1326 (Fed. Cir. 2016), are inconsistent with this conclusion, we overrule those decisions. . We also have recognized this fact when endorsing the use of the broadest reasonable claim interpretation standard in other areas of PTO review. See, e.g., In re Rambus, Inc., 753 F.3d 1253, 1256 (Fed. Cir. 2014) (finding that, in inter partes reexamination, "the sole basis for the 'broadest reasonable interpretation' rubric is the ability to amend claims” (quoting 1 Patent Off. Litig. § 4.70)); In re Prater, 415 F.2d 1393, 1404-05 (CCPA 1969) (holding that claims are given their broadest reasonable interpretation during examination "since the applicant may then amend his claims”). . The Board designated the Idle Free decision “representative.” According to the PTO, representative opinions "provide a representative sample of outcomes on a matter” but are not binding authority. . The Board designated Masterlmage as a “Precedential Decision.” To designate a Board decision as precedential, the full Board is given the opportunity to review and vote on the opinion and the Director must approve the designation. . We are unanimous in this conclusion. None of the other opinions endorse the PTO's conclusion that § 316(d) unambiguously answers the burden of persuasion question; they only conclude that the statutory scheme is ambiguous with respect to that question. . This interpretation also makes IPRs consistent with other PTO-based proceedings. There is no evidence that Congress intended to deviate from this well-established rule or that it intended to permit the PTO to do so. Other PTO-based proceedings have (or had) the same distribution of burdens. In pre-AIA inter partes reexamination proceedings, "the examiner retain[ed] the burden to show invalidity.” In re Jung, 637, F.3d 1356, 1365-66 (Fed. Cir. 2011). In pre-AIA interference proceedings, a party challenging an existing claim bore the burden of showing that “the claims of the ... application were unpatentable.” Velander v. Garner, 348 F.3d 1359, 1369-70 (Fed. Cir. 2003). In ex parte reexaminations, the PTO bears the burden to demonstrate unpatenta-bility. See 35 U.S.C. § 305. And in reissue proceedings, the patent owner is not required to come forward with affirmative evidence showing that it has not added new matter; instead, the PTO must evaluate this question. See 35 U.S.C. § 251. When enacting the AIA, Congress acted against this backdrop. "[A] fair reading of statutory text” includes recognition that " ‘Congress legislates against the backdrop’ of certain unexpressed presumptions.” Bond v. United States, - U.S. -, 134 S.Ct. 2077, 2088, 189 L.Ed.2d 1 (2014) (quoting EEOC v. Arabian Am. Oil Co., 499 U.S. 244, 248, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991)). . Judge Taranto’s contention that it is meaningful that these initial sections do not discuss a petitioner's obligations vis-á-vis proposed amendments is perplexing. Of course they do not. The statutory sections relating to IPRs are ordered in temporal fashion. Sections 311-13 deal with showings that must be made prior to institution or as part of the institution process. Proposed amendments come after and in response to the grounds on which institution is granted. The PTO acknowledges this fact in its briefing. PTO Suppl. Br. 24 (“The petition phase of a review, of course, does not involve amended claims—a patent owner cannot seek to amend in an inter partes review unless the petitioner has first filed a petition for inter partes review.” (emphasis in original)). It is notable that it is only after laying out all steps of the IPR procedure, other than those dealing with what the Director must do to resolve an IPR, that Congress outlines the nature and placement of the burden of proof regarding propositions of unpatentability in the IPR. . Here, the Board found that all these requirements were satisfied. Zodiac Pool Sys., Inc., v. Aqua Prods., Inc., No. IPR2013-00159, 2014 WL 4244016, at *22-26 (P.T.A.B. Aug. 22, 2014) (noting that the proposed amended claims satisfied all criteria under both § 316(d) and Rule 42.121, were not indefinite, and satisfied the written description requirement). . Aqua argued before the panel that the PTO lacked authority to require that any proposed amendment "respond to a ground of unpa-tentability” involved in the IPR. We conclude, however, that this procedural requirement fits within the Director’s delegated authority to "set[ ] forth standards and procedures for allowing the patent owner to move to amend the patent,” 35 U.S.C. § 316(a)(9),. and does not go so far as to eviscerate the right to amend Congress granted patent owners in § 316(d). Indeed, Rule 42.121 is consistent with the directive in § 316(d)(1) that a motion to amend be directed to "challenged claims.” . Even the PTO does not suggest in its briefing to us that anything in any of its Federal Register commentaries supports its position. . We do not accept Judge Taranto’s suggestion that our analysis of Chevron should be less thorough. The Chevron question developed slowly in this case. In its initial brief, Aqua argued that the PTO could not resort to a request for Chevron deference because § 316(e) unambiguously prohibited the PTO's amendment practices, regardless of how they were put in place. The PTO, similarly, argued that § 316(d) unambiguously justified its practices, and only discussed the concept of deference to the Board’s practices in the alternative. It was not until our decisionmaking process that questions of Chevron and Auer deference loomed large. It is because the four dissenters conclude that Chevron dictates the result here, and because Judges Chen and Hughes believe Auer does the same, that the rest of the court has been forced to address Chevron and Auer. Having been taken there, we choose to address those concepts fully. . This opinion is limited to addressing the PTO’s claim that its Board opinions are entitled to Chevron deference for the statutory interpretation and gap filling performed therein because Congress authorized it to do so in § 316(a). This opinion does not address the distinct question of whether the Board opinions would be entitled to Auer deference to the extent they interpret agency regulations. Chevron deference applies to an agency's statutory interpretations, Auer deference applies to an agency’s regulatory interpretations. . I have trouble understanding how the pronouncement in Idle Free fits within even the agency's own claims for Chevron deference as that opinion is designated "informative,” not precedential, and was not voted upon by the full Board or approved by the Director, and is not binding on future panels’ . Section 316(b) reiterates Congress' choice to authorize the Director to gap fill through regulations and only after considering particular policy considerations which Congress intends to guide the Director’s actions: "In prescribing regulations under this section, the Director shall consider the effect of any such regulation on the economy, the integrity of the patent system, the efficient administration of the Office, and the ability of the Office to timely complete proceedings instituted under this chapter.” . Certain rules, including rules on procedure, are exempt from the notice-and-comment rulemaking requirements of § 553. 5 U.S.C. § 553(b)(A). Even the agency concedes that the rule at issue relates to a legal standard that it created and does not fall within § 553(b)'s exceptions to notice and comment rulemaking. Director Br. 10 ("A ‘standard of proof is one of a number of common legal 'standards.' ”). . On May 16, 2017, the PTO Director explained that she intends to expand agency adjudication through precedential decision making and streamline the procedure for such decision making. See Bryan Koenig, PTAB Not Mowing Down Patents, USPTO Head Says, Law360 (May 16, 2017), https:// www.law360.com/articles/924461/ptab-not-mowing-down-patents-uspto-head-says; see also Director Michelle K. Lee, Keynote Address at the George- Washington University School of Law (May 16, 2017), https://www. uspto.gov/about-us/news-updates/remarks-director-michelle-k-lee-george-washington-university-school-law. . In fact, the opinion can be designated prec-edential without even the parties to the case being given any opportunity for comment. The Board's procedure allows any member of the public to request that an opinion be designated precedential, but neither that person, nor the interested public has the opportunity for any further input into the Board's determination. . 35 U.S.C. § 2(b)(2)’s broad grant of authority to the Office to establish regulations to "govern the conduct of proceedings in the Office’’ does not eliminate the requirement that the PTO, like other agencies, must comply with the requirements of the APA. Notably, § 2(b)(2) expressly requires the agency's regulations "shall be made in accordance with section 553 of title 5.” Even if the delegation to the Director had not specified that the Director must prescribe regulations to create legal standards governing motions to amend, § 553 requires notice and comment rulemaking for agency action purporting to adopt substantive standards as opposed to interpretive rules or rules of agency procedure. . An agency interpretation not entitled to Chevron deference may nonetheless be entitled to Skidmore deference which the Supreme Court describes as follows: "Such a ruling may surely claim the merit of its writer's thoroughness, logic, and expertness, its fit with prior interpretations, and any other sources of weight.” Mead, 533 U.S. at 235, 121 S.Ct. 2164. Skidmore deference is a somewhat ethereal concept as it amounts to deference which the Supreme Court explains is proportional to the ruling’s “power to persuade.” Id. This feels a lot like saying I defer to your interpretation because I have determined that it is correct. . Because the Supreme Court stated in Cuoz-zo that § 316(a) "allows the Patent Office to issue rules,” Judge Hughes concludes that "rules” and "regulations” must have identical scope. Hughes Op. at 1364-65. He concludes that the terms are "interchangeable” and that Congress' delegation to the PTO to "prescribe regulations” should thus be construed as granting the agency much broader authority, namely the authority to adopt rules by any means (including through Board opinions). Id. I do not agree. And I see no inconsistency in the Supreme Court's reference to a regulation as a rule. It is correct to say regulations are rules, it is not correct to say that all rules are regulations. An apple is a piece of fruit, but not all fruit are apples. .Judge Hughes suggests that since three decisions have given Chevron deference to something other than a regulation even where the statute delegated authority to regulate, we’ should too. See Hughes Op. at 1365 (citing Cooper Techs. Co. v. Dudas, 536 F.3d 1330 (Fed. Cir. 2008); Tibble v. Edison Int'l, 729 F.3d 1110 (9th Cir. 2013), vacated on other grounds, - U.S. -, 135 S.Ct. 1823, 191 L.Ed.2d 795 (2015); Mylan Labs. Inc. v. Thompson, 389 F.3d 1272 (D.C. Cir. 2004)). The Mylan decision never mentions the statutory grant of authority (or the fact that it refers to regulations), so surely that case does not amount to a deliberate holding that when the statute only delegates authority to regulate, the agency is free to act in a less formal manner and still be entitled to Chevron deference. To the extent the remaining two decisions can be read to afford Chevron deference to agency action which differed from that expressly and exclusively delegated by Congress to the agency, I do not agree with them. These decisions are nonetheless easily distinguished from ours. Cooper treated the interpretation at issue as addressing a matter of procedure (procedural rules are exempt from notice and comment rulemaking under § 553(b)). 536 F.3d at 1336. Tibbie held that the regulatory preamble at issue had in fact gone through full notice and comment and appeared in the agency’s final rule. The PTO seeks Chevron deference for the legal standard it adopted in two Board opinions, not a procedural rule, and these Board opinions did not go through notice and comment rulemak-ing. . Two years passed before the Board proposed a rationale. Proposed Rule, Amendments to the Rule of Practice for Trials Before the Board, 80 Fed. Reg. 50720-01, 50723 (Aug. 20, 2015) (codified at 37 C.F.R. pt. 42). . Designating a decision as precedential requires each Board member to vote on the opinion and the Director's concurrence. PTAB Standard Operating Procedure 2 (Rev. 9) 2. Precedential opinions are “binding authority in subsequent matters involving similar facts or issues.” Id. at 3. . See, e.g., Br. for Intervenor - Dir. of the United States Patent and Trademark Office, Symantec Corp. v. Veeam Software Corp., No. 2015-1894, 2016 WL 380962, at *2-3 (Fed. Cir. Jan. 27, 2016); Br. for Intervenor - Dir. of the United States Patent and Trademark Office, In re Bosch Automotive Serv. Sols., LLC, No. 2015-1928, 2016 WL 661516 (Fed. Cir. Feb. 8, 2016); Corrected Br. for Interve-nor-Director of the United States Patent and Trademark Office, Shinn Fu Co. of Am., Inc. v. The Tire Hanger Corp., No. 2016-2250, 2016 WL 6833819, at *27-28 (Fed. Cir. Nov. 16, 2016); Br. for Intervenor - Dir. of the United States Patent and Trademark Office, In re Silver Peak Sys., Inc., No. 2015-2072, 2016 WL 661517, at *45-46 (Fed. Cir. Feb. 8, 2016). . In National Cable & Telecommunications Ass’n v. Brand X Internet Services, the Supreme Court reversed a Ninth Circuit decision for failure to apply Chevron deference to the Federal Communications Commission’s interpretation of Title II of the Communications Act. 545 U.S. 967, 980, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005). Brand X does not require the court to apply Chevron deference where, as here, the Patent Office never considered the statutory question facing the court. See Sandoz Inc. v. Amgen Inc., - U.S. -, 137 S.Ct. 1664, 1678, 198 L.Ed.2d 114 (2017) (Breyer, J., concurring). . The Proxy conn decision suggests that the Patent Office may possess such adjudicatory rulemaking power for motions to amend. 789 F.3d at 1307. However, it fails to consider the plain language of § 316(a)(9) that expressly limits the Director’s rulemaking power to promulgating regulations. . The APA's mandate states that “an agency shall afford interested persons general notice of proposed rulemaking and an opportunity to comment before a substantive rule is promulgated.” Chrysler, 441 U.S. at 313, 99 S.Ct. 1705; Perez v. Mortg. Bankers Ass’n, - U.S. -, 135 S.Ct. 1199, 1211, 191 L.Ed.2d 186 (2015) (Scalia, J., concurring). The Patent Office’s attempt to reverse-engineer Idle Free into a regulation with the force and effect of law cannot stand because failure to provide the public notice before engaging in substantive rulemaking runs afoul of the APA. See Chrysler, 441 U.S. at 316, 99 S.Ct. 1705. . On this point, I agree with Judge O’Malley’s view solely to the extent that § 316(d) does not unambiguously impose a burden of persuasion on the patent owner. O’Malley Op. 1304. . This same reasoning applies to the second question presented: whether the Board can sua sponte raise patentability issues if the petitioner does not raise a patentability argument. The Patent Office has not fully considered whether the inter partes review statute can be reasonably interpreted to give the Board this kind of broad discretion, in particular where, as here, the petitioner remains in the inter partes review proceeding.